In re The Marriage of Janet Lynn VANNAUSDLE and William Mark Vannausdle.

Upon the Petition of Janet Lynn Porter, f/k/a Janet Lynn Vannausdle, Appellee,

And Concerning William Mark Vannausdle, Appellant.

No. 02–0471.

Supreme Court of Iowa.

Sept. 4, 2003.

Joseph G. Bertogli, Des Moines, for appellant.

A. Eric Neu of Neu, Minnich, Comito & Neu, P.C., Carroll, for appellee.

CADY, Justice.

In this appeal, we must decide the amount of postsecondary education subsidy that divorced parents should pay to assist their child with the expense of a college education. We vacate the decision of the court of appeals and affirm the district court as modified by this opinion.

## I. Background Facts and Proceedings.

Janet and William were divorced in 1988. Under the district court decree for dissolution of marriage, Janet was designated the primary caretaker of the parties' two children, Tanya and Abby. Tanya was eight years old at the time. Abby was five years of age. William was obligated under the decree to pay child support each month, and the district court expressly retained jurisdiction to determine the amount each parent would be responsible to pay in the event one or both of the girls pursued education beyond high school. The child support obligation otherwise terminated when the children turned eighteen years of age and no longer attended school.

On June 28, 2001, Janet filed a petition to modify the dissolution decree to establish a postsecondary education subsidy for Abby. Abby had graduated from high school the preceding month and planned to attend Iowa State University in the fall. She graduated with a 4.0 grade point average and was the valedictorian of her class.

At the time of the modification proceeding, William had an annual income of almost $57,000, while Janet's annual income was approximately $11,000. At the modification hearing, Janet introduced a chart prepared by Iowa State University into evidence that showed the estimated annual costs of attending the university for the 2001–2002 academic year were:

| | |
|---|---|
| Full-time tuition fees | $ 3442 |
| Room and board | $ 4666 |
| TOTAL Direct Costs | $ 8108 |
| Estimated books and supplies | $ 754 |
| Estimated costs for personal expenses, transportation, etc. | $ 2748 |
| TOTAL indirect costs | $ 3502 |
| TOTAL estimated cost of attendance | $ 11,610 |

Abby was eligible to receive financial aid from various sources for the school year in the amount of $11,575. Some of the aid resulted from her academic performance in high school and some was based on the submission of her application for federal student aid. The specific sources of financial aid were:

| | | |
|---|---|---|
| I.S.U. Grant | $ | 600 |
| Acad[emic] Recognition Iowa | $ | 500 |
| Catt Fan [Account] | $ | 500 |
| Work–Study Eligibility | $ | 1800 |
| Federal Perkins Loan | $ | 850 |
| Hixson Opportunity Award | $ | 2500 |
| Federal Pell Grant | $ | 2200 |
| Federal Direct Subsidized Stafford/Ford Loan | $ | 1100 |
| Federal Direct Unsubsidized Stafford/Ford Loan | $ | 1525 |
| TOTAL aid | | $ 11,575 |

Additionally, Abby received three one-time college scholarships upon graduation from high school totaling $2250. This amount was paid directly to Abby and deposited in her personal bank account.

The district court determined the amount of the parents' college subsidy by first considering the total annual educational cost, which it found was $11,610. It then deducted $6300 in various grants, awards, and scholarships Abby received through Iowa State University from the total cost, as well as the work-study amount of $1800, to determine the amount subject to the subsidy. It did not deduct the loans, nor did it consider the $2250 in scholarships received by Abby independent of the financial aid through Iowa State University. From the balance of $3510, the district court determined William should pay two-thirds of the amount and Janet should pay one-third.

William appealed. He claimed the court erred by including the estimated miscellaneous personal expenses of $2748 as an educational expense, and by failing to consider the high school scholarships of $2250 as funds Abby could contribute, apportioned over four years. William asserts that the annual college expenses not covered by the grants, awards, and scholarships were $1999, and his annual subsidy should be limited to two-thirds of that amount or $1333. We transferred the case to the court of appeals.

The court of appeals reversed the decision of the district court and found no subsidy was warranted. It determined that Abby's educational expenses were only $8862, and including her loans and work-study funds, she had more than enough financial aid to cover her college expenses. We granted further review sought by Janet.

## II. Standard of Review.

Our scope of review in this equitable action is de novo. Iowa R.App. P. 6.4.

## III. Postsecondary Education Subsidy.

As a part of the provisions relating to the disposition of property and support in a dissolution of marriage, Iowa Code section 598.21(5A) (2001) permits a court to order either party to a divorce to subsidize the postsecondary educational expenses of a child if good cause is shown. *See also* Iowa Code § 598.1(8). The child must be between eighteen and twenty-two years of age and either regularly attend vocational-technical training, be a full time college student, or be "accepted for admission to a college" for the next regular term. *Id.* The subsidy payment is known as a "postsecondary education subsidy." *Id.*

To determine if good cause exists for a postsecondary education subsidy, the court considers the child's age, postsecondary educational ability, financial resources, and whether the child is self-sustaining. *Id.* § 598.21(5A)(*a*). The court also considers "the financial condition of each parent."

*Id.* If good cause exists for a subsidy, the amount is then determined by apportioning between the parents the amount of the educational expenses the child cannot reasonably be expected to pay. *Id.* § 598.21(5A)(*a*)(3).

Under this approach, the statute directs the court to first determine the "cost of postsecondary education based upon the cost of attending an in-state [undergraduate] public institution." *Id.* § 598.21(5A)(*a*)(1). The cost must "include the reasonable cost for only necessary postsecondary education expenses." *Id.* After this cost component is determined, the court must next determine the amount the child "may reasonably be expected to contribute" to the payment of the costs in light of the child's financial resources. *Id.* § 598.21(5A)(*a*)(2). In determining a child's financial resources, the court considers "the availability of financial aid whether in the form of scholarships, grants, or student loans," as well as "the ability of the child to earn income while attending school." *Id.*

The subsidized amount subject to apportionment among the parents is then determined by subtracting the amount of the child's expected contribution from the postsecondary education expenses. *Id.* § 598.21(5A)(*a*)(3). However, an amount apportioned to a parent cannot exceed one-third of the total postsecondary education cost. *Id.*

The postsecondary education subsidy concept was implemented by our legislature in 1997. *See* 1997 Iowa Acts ch. 175, § 190. Prior to that time, the parental obligation of "support" was statutorily defined to include children who attend vocational training after high school or attend college. *See* Iowa Code § 598.1(6) (1995). The procedures followed to determine the amount of the parental obligation for support of children in college prior to the 1997 enactment were generally established by case law. *See In re Marriage of Griffin,* 570 N.W.2d 258, 260 (Iowa Ct. App.1997) (recognizing the cost of college includes "tuition, room, board, and books"), *overruled in part by In re Marriage of Williams,* 595 N.W.2d 126, 130 (Iowa 1999); *State ex rel. Tack v. Sandholt,* 519 N.W.2d 414, 426 (Iowa Ct.App. 1994) (listing factors to consider in determining parental support obligation for college expenses). Thus, the postsecondary education subsidy provisions now provide specific legislative guidance. Additionally, our legislature specifically made the provisions retroactive, and any divorce decree providing for support of a child in college entered before July 1, 1997, is subject to modification in accordance with the statutory procedures. *See* 2002 Iowa Acts ch. 1018 §§ 17, 21 (codified as Iowa Code § 598.21(5A)(*e*) (2003)); *see also Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co.,* 606 N.W.2d 370, 375–76 (Iowa 2000) (statutes are applied retrospectively when such application is the express intention of the legislature); 2 Norman J. Singer, *Statutes and Statutory Construction* § 41.4, at 409–10 (6th ed. 2001) ("When it is clear that retroactive effect is intended, the court will adjudicate the case according to the law in existence at the time of the appellate decision rather than at the time of the judgment below.").

In this case, the court of appeals applied section 598.21(5A) in a mechanical fashion, and interpreted the concept of "postsecondary education expense" in a strict manner. It limited the expense component to tuition, room and board, books, and supplies, and failed to include any miscellaneous expenses considered by Iowa State University to be common expected expenses for college students. It also applied

the statute independent of the mutual desires of the parents to exclude loans.

■ We recognize the expense component under the statutory procedures is limited by our legislature to include "the reasonable costs for only necessary postsecondary education expenses." Iowa Code § 598.21(5A)(*a*)(1). However, the actual and necessary costs of attending college exceed tuition, books, supplies, and a room and board plan.[1] We make no attempt to delineate the additional miscellaneous expenses, but believe it is sufficient to recognize that a college education includes social, cultural, and educational experiences outside the class room that impose additional expenses for students. Students also incur normal and reasonable living expenses beyond a standard room and board fee.[2]

We think our legislature also understood that the necessary postsecondary education expenses includes more than tuition, books, and room and board. *See State v. DeCamp*, 622 N.W.2d 290, 295 (Iowa 2001) (statutes are construed to avoid unreasonable results). If the legislature wanted to limit college costs to tuition, room, board,

and books, they would have specifically done so. *See* 73 Am.Jur.2d *Statutes* § 119, at 329 (2001) (footnote omitted) ("The legislature will be presumed to have intended to make no limitation to a statute in which it has included by general language many subjects, persons, or entities without limitation."). Moreover, we observe that any interpretation that fails to consider the normal miscellaneous expenses in the cost component will. in turn likely limit the amount the student can reasonably contribute to expenses for tuition and room and board because the student will need to devote personal financial resources to cover the miscellaneous expenses. Thus, under the statutory approach for determining parental responsibility for college expenses, there is no reason to limit costs to an unrealistic amount.

We also recognize that the component of the formula dealing with the expected contribution of the student specifically includes "student loans." Clearly, loans obtained by students can be considered as a part of their contribution to the expense component, even though it represents a

1. Of course, the actual and necessary costs of a postsecondary education also vary based upon a student's progression through the postsecondary educational experience. In this case, we consider a subsidy issue based on a student's circumstances in her first year of college. However, college expenses frequently increase in subsequent years. *See* 1 Alisa F. Cunningham, et al., *Study of College Costs and Prices, 1988–89 to 1997–98* at 27, Table 4 (2001), *available at* http://nces.ed.gov/pubs2002/2002157.pdf (indicating that, historically, expenses for postsecondary education at public institutions have increased three to four percent annually). In addition, innumerable other changes—such as alterations in financial aid or the financial status of the student—may occur, creating conditions that were not present in the first year of college. For this reason, we recognize that the postsecondary education subsidy contemplated by the parties and ordered by

the court may need to anticipate such changes. In the absence of an agreed-upon method for anticipating these changes, the subsidy may need to be revisited and revised on an annual basis.

2. It is significant that the in-state public institutions utilized by the legislature as a guide for determining the cost component of the subsidy considered the normal and expected expenses in excess of tuition, fees, and room and board to be approximately $3000 to $4000 for the 2001–02 academic school year. *See* Iowa College Student Aid Commission, *Typical Undergraduate Student Expenses* at 1, 4 (2001) (providing estimated "other expenses" information for Iowa State University, University of Iowa, and University of Northern Iowa, including allowances for "books and supplies," "transportation," and "personal expenses").

financial resource that must be repaid in the future. However, under the circumstances of this case, the loans should have been excluded from the student contribution component of the formula.

■ We believe the starting point for the most equitable resolution of this case begins with the decision by the district court not to include Abby's student loans as an expected contribution under the formula. In his appeal from the district court decision, William never argued that student loans should be an expected contribution. Similarly, Janet never asserted such an argument. Implicit in the parties' approach is their mutual understanding that the debt incurred by Abby through student loans should not be used to reduce their respective subsidy for her college expenses. Thus, even though the statute permits student loans to be included, such loans should not be included when it is contrary to the wishes of the parties. Moreover, a court applying principles of equity should not decline to award a subsidy when neither party requests such relief.

Accordingly, we determine the annual educational costs for Abby's college education to be $11,610. Abby's annual expected financial contribution, excluding student loans, is $8662. This amount includes the work-study income and one-fourth of the one-time scholarships she received upon graduation from high school. Thus, the remaining cost of her annual education is $2948. This is the amount subject to the subsidy. Based on the available financial information pertaining to William and Janet, we conclude William should be apportioned seventy percent of the remaining education costs and Janet should be apportioned thirty percent of the amount.

### IV. Conclusion.

We vacate the decision of the court of appeals and affirm the district court decision as modified by this opinion. We modify the district court order to set the annual postsecondary education subsidy for William in the amount of $2064 and modify the order to set the annual postsecondary education subsidy for Janet in the amount of $884. One-half of each respective subsidy shall be paid on September 1, with the remaining half paid on January 1 as provided by the district court decree. We deny Janet's claim for attorney fees.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**