**In re the MARRIAGE OF Deborah A. NEFF and Robert F. Neff.**

**Upon the Petition of Deborah A. Neff, Appellee,**

and

**Concerning Robert F. Neff, Appellant.**

No. 03–0379.

Supreme Court of Iowa.

Feb. 25, 2004.

Thomas P. Murphy of Hopkins & Huebner, P.C., Des Moines, for appellant.

J. Terrence Denefe of Kiple, Denefe, Beaver, Gardner & Zingg, L.L.P., Ottumwa, for appellee.

STREIT, Justice.

Deborah and Robert Neff, a divorced couple, are fighting over how much the latter ought to pay for two of their children's college educations. The district court found Robert had agreed to pay one-third but failed to do so, and ordered Robert to reimburse Deborah for money she had paid to compensate for his non-payment. The court of appeals reversed the district court's finding, vacated its order for reimbursement, and modified the decree to require Robert to pay each child $225 per year for their college expenses so long as they remained "under the age of twenty-two years."

· On further review, we find Robert did not agree to pay one-third of his children's college expenses, and affirm the court of appeals in this respect. Because the court of appeals incorrectly used the children's financial aid award notifications to determine their expected contributions, however, we recalculate the postsecondary edu-

cation subsidies Robert owes. We also hold the correct timeframe for a postsecondary education subsidy is when the child is older than seventeen and less than twenty-three.

## I. Facts and Prior Proceedings

Deborah and Robert Neff were divorced in 1998. They have three children: Anthony (born September 1981), Angela (born August 1983), and Alexander (born December 1989). At issue in this appeal is Iowa's postsecondary education subsidy statute, which allows a court to order a "postsecondary education subsidy" if good cause is shown. Iowa Code § 598.21(5A) (2001). In determining whether good cause exists, the court shall consider the child's financial resources and the financial condition of the parents. *Id.* § 598.21(5A)(*a*). If the court determines good cause is shown, the amount of subsidy cannot exceed thirty-three and one-third percent of the total cost of postsecondary education, based upon the cost of attending an in-state public institution. *Id.* Also at issue is the parties' divorce decree, which originally incorporated the following stipulation:

> In the event that post-secondary education subsidy is required for any of the parties [sic] children, then pursuant to Chapter 598.1 and 598.21(5A), the amount paid by each parent should not exceed thirty-three and one-third percent (33 1/3%) of the total cost of postsecondary education and shall be determined pursuant to the above and foregoing sections of the Code of Iowa.

In June 2000, Deborah filed an "Application for Modification of Decree of Dissolution of Marriage." In her petition, she informed the court Anthony had graduated from high school in May, and would be attending the University of Iowa in the fall. She asked the court, in part, to modify the decree in order to "set forth the

responsibility of the parties with respect to postsecondary education subsidy . . . ."

The court entered a "Written Stipulation and Order Modifying Decree of Dissolution of Marriage," in which it found there had been a substantial change in the circumstances since the divorce. The 2000 order replaced the provision for postsecondary education in the 1998 decree with the following two paragraphs:

> The child, Anthony Neff, shall be entitled to a postsecondary education subsidy pursuant to Sections 598.1(8) and 598.21(5A) of the Code of Iowa and the amount paid by each parent shall not exceed thirty-three and one-third percent (33 1/3%) of the total cost of postsecondary education.

> In the event that postsecondary education subsidy is required for any of the other children of the parties, said postsecondary education subsidy shall be provided as set forth in Section 598.1(8) and Section 598.21(5A) of the Code of Iowa.

Remarkably, nothing in this document ordered Robert to pay a postsecondary education subsidy.

Two years passed. In July 2002, Deborah filed an "Application to Determine Responsibility of the Parties for Postsecondary Education Subsidy." In her application, Deborah requested the court hold a hearing and "enter an Order requiring [Robert] to make appropriate postsecondary education subsidy payments" for Anthony and Angela.

After a hearing held in February 2003, the district court ruled

> There is no question that [Robert] has on at least two occasions . . . agreed to the postsecondary education subsidy set forth in Section 598.21(5A). Pursuant to the decree each parent is clearly required to pay one third of the balance of

college expenses after deductions from the total for loans and grants received by the student child. The petitioner has complied with the decree and the respondent has not. . . .

The record establishes that the children have done their part in obtaining loans and grants as well as by working. The record also establishes that [Deborah] is doing her part by providing payments to the children and apparently advancing to them what should be [Robert's] share. . . .

The district court ordered Robert to reimburse Deborah $3874,[1] begin making payments towards his one-third share, contribute $700 towards Deborah's attorney fees, and pay court costs.

Before the court of appeals, Robert made three assignments of error: (1) the district court erroneously concluded he had agreed to pay one-third of his children's postsecondary expenses; (2) even if the district court had properly determined Robert should pay a postsecondary education subsidy, it erred in requiring him to reimburse Deborah directly; and (3) the court abused its discretion in awarding Deborah attorney fees.

The court of appeals determined Robert had not agreed to pay one-third of his children's postsecondary education expenses. The court therefore concluded

Robert need not reimburse Deborah, because he did not presently owe anything. The court calculated the postsecondary education subsidy which Anthony and Angela should henceforth receive from Robert. After determining both children qualified for a postsecondary education subsidy, the court of appeals modified the decree to require Robert to pay each child $25 a month (excluding June, July, and August) as long as each child remained in school and "under the age of twenty-two years." Lastly, the court of appeals held the district court did not err in awarding attorney fees, but refused to award appellate attorney fees.

On further review, Deborah makes three assignments of error. First, she asks us to circumscribe *In re Marriage of Longman*, 619 N.W.2d 369 (Iowa 2000), in order to permit reimbursement to a parent who pays for the other parent's share of a postsecondary education subsidy when the latter (whom Deborah labels the "defaulting" parent) fails to fulfill his obligations. Second, Deborah contends the court of appeals erred in calculating the amount of postsecondary education subsidy Robert owed, because it included a parent loan, which was listed in Anthony's financial aid award notification, as part of Anthony's expected contribution. Third, Deborah claims the court of appeals incorrectly

---

1. The district court ruling does not provide this monetary figure, but merely states "Exhibit 'A' attached to the July 30, 2002 application appears to be a correct calculation of the amounts owed by the respondent." The court of appeals determined the amount awarded by the district court was $5811. In Exhibit A, Deborah demanded Robert reimburse her $1881.50 for Anthony's 2000–01 school year, $1746.00 for Anthony's 2001–02 school year, and $2183.50 for Angela's 2001–02 school year. The sum of these three figures is $5811. The district court's order, however, states "[p]ursuant to the decree each parent is clearly required to pay *one third of the bal-* *ance of college expenses after deductions from the total for loans and grants received by the student child.*" (Emphasis added.) According to Exhibit A, the balance of college expenses after loans and grants received by the children was $11,622. One third of $11,622 is $3874. As we shall see, the district court's order is mistaken on two levels: (1) the decree does not require Robert to pay a subsidy, and in any event, (2) the statute imposes a one-third cap "on the *total cost* of postsecondary education," *before* deductions for loans and grants. Iowa Code § 598.21(5A)(*a*)(2) (emphasis added).

stated the timeframe in which Robert is responsible.

Robert maintains the court of appeals correctly decided the case. We now examine Deborah's three assignments of error, in turn. Additional facts will be set forth below as needed.

## II. Scope of Review

Our scope of review in this equitable action is de novo. Iowa R.App. P. 6.4.

## III. The Merits

### A. *Longman*

■ As previously indicated, Deborah first urges us to overrule or limit *Longman.* In *Longman,* a father paid his son's college costs for three semesters before the district court ordered the son's mother to pay a twenty-percent subsidy. 619 N.W.2d at 370. The court, which also determined the father ought to pay a one-third subsidy, ordered the mother to reimburse the father for what he had paid above his one-third subsidy over the previous three semesters. *Id.* Although we concluded the mother's financial situation was "not sufficient to warrant the imposition on her of any portion of the college expenses," in dicta we

> express[ed] the view that the district court's ruling requiring reimbursement by [the mother] was wrong even if she had an obligation to contribute toward [the son's] college expenses. *Any obligation she would have had in that regard under section 598.21(5A) is owed to [the son] and is properly payable only to him or to the educational provider.* [The father], in paying more than his one-third, court-ordered subsidy, was a volunteer and is not entitled to reimbursement for the extra amount paid.

*Id.* at 371 (emphasis added) (citing Iowa Code § 598.21(5A)(*b* ), which states "[a]

postsecondary education subsidy ·shall be payable to the child, the educational· institution, or to both, but shall not be payable to the custodial parent"). Deborah maintains this *Longman* principle is inequitable, because a parent obligated to provide a postsecondary education subsidy can simply refuse to pay, and thereby force the other parent, without any hope of reimbursement, to contribute on the obligated parent's behalf.

■ Deborah's argument, however, *incorrectly assumes Robert was in default of his obligations.* We quote, with approval, the following passage from the court of appeals' decision:

> [T]he legislature has said that the subsidy shall not exceed thirty-three and one-third percent of the total cost of postsecondary education. *See Longman,* 619 N.W.2d at 370. *The thirty-three [and one-third] percent is a cap on each parent's obligation.* The percentage, if any, the parent pays depends on his or her financial situation. Iowa Code § 598.21(5A)(*a*)(3). *While the cap on Robert's subsidy was set in the [2000] modification order, that order did not determine what if any subsidy each parent was required to make.* Consequently we must agree with [Robert's] argument that *at the time· of the hearing from which this appeal was taken there was no order in place requiring him to pay one third of [Anthony's] and Angela's costs,* and the district court's order finding there was an agreement was in error.

(Emphasis added.) The only relevant difference between the 1998 and 2000 stipulations is the fact that in the latter Robert conceded Anthony was *entitled to* a subsidy. There is a manifest difference in stipulating that a cap and a code section apply, as opposed to *fixing* the amount of a postsecondary education subsidy. *See In re*

*Marriage of Rosenfeld,* 668 N.W.2d 840, 847 (Iowa 2003). For reasons unknown, neither Deborah nor her attorney ensured she received a *determination of and order for* a subsidy for Anthony and Angela from Robert. Instead, the decree, as modified in 2000, merely states Anthony is entitled to a postsecondary education subsidy, the Iowa Code section 598.21(5A) "cap" applies, and that neither party shall pay more than one-third of either child's college costs.[2] Prior to the court of appeals' decision, no subsidy was ever awarded; only a cap was put in place. Therefore Deborah's first assignment of error, i.e. that we should reconsider *Longman* to permit reimbursement to a parent who pays for a "defaulting" parent's share of a postsecondary education subsidy, is based upon a false premise: at the time of the 2003 hearing, Robert was *not* obligated to pay a postsecondary subsidy. We need not, therefore, consider the merits of her argument. "A question is moot when the issues it presents are merely academic, and any judgment rendered can have no practical legal effect." *State v. Beyer,* 258 N.W.2d 353, 355 (Iowa 1977).

## B. Determination of the Postsecondary Education Subsidies

The court of appeals determined Robert should pay Anthony and Angela postsecondary education subsidies of $25 a month, each, excluding the months of June, July, and August. Deborah claims the court of appeals miscalculated these subsidies because it considered a parent loan in Anthony's financial aid award notification as an expected student contribution. Neither party disputes that Anthony and Angela meet the basic qualifications for a postsecondary education subsidy. Both children appear to be full-time college students be-

tween the ages of eighteen and twenty-two. Iowa Code § 598.1(8).

In order to determine whether there is "good cause" to award a postsecondary education subsidy in this case, we must first point out the meager means of the parents. *See id.* § 598.21(5A)(*a*) (in determining good cause, court must consider, among other factors, the financial conditions of the parents). The court of appeals found

Both Deborah and Robert are of modest means and have modest incomes. Tax returns entered as exhibits show that in 2001 Deborah had an adjusted gross income of $21,381. She had state, social security and self-employment tax liability in that year of $2,816. She owed no federal income tax because she was entitled to education credits in the amount of her tax. She received earned income credit of $1,104 and receives about $3,600 a year in child support. This means Deborah would have had $24,004 of disposable income in 2001. At trial Deborah testified she had earned about $31,800 in 2002. We therefore assume her 2002 financial situation is as good as or better than it was in the previous year. She shows a net worth of $3,227. Deborah has one minor child in her home and she provides the support for the child that is not met by Robert's contributions.

In 2001 Robert had adjusted gross income of $23,171. In 2001 he paid about $3,954 in federal, state, social security and Medicare taxes. Robert pays $299.85 a month as child support for the parties' youngest child and pays $264.60 a month to maintain health insurance on all the children, for an annual monetary

---

2. Although her subjective intentions are not relevant to this appeal, it is unclear why, if Deborah truly thought the 2000 stipulation *awarded* a one-third subsidy, she waited two years to enforce it.

contribution to the children of $6,720.... Robert's tax and family obligations total about $10,674. This leaves him with disposable income of about $12,497. Deborah testified Robert's income for 2002 was $21,000. We assume that his financial situation is no better for 2002 than it was for the prior year. Robert is married and lives with his wife, who is employed and shares living expenses. The only assets he shows are a 1989 Chevrolet truck with 174,000 miles, a bank account of $130 and furniture worth $50.

Based upon these findings, which neither party challenges, we conclude that while there is good cause for a modest postsecondary education subsidy, the children will have to pay for substantially all of their college educations. We cannot construe the statute to require these particular parents to pay more than a modest share, even if it means the children will not have sufficient funds to complete college in the traditional four years or without working or borrowing.

Having determined there is "good cause" for a modest postsecondary education subsidy, we employ the following analysis:

[we must] first determine the "cost of postsecondary education based upon the cost of attending an in-state [undergraduate] public institution." [Iowa Code] § 598.21(5A)(*a*)(1). The cost must "include the reasonable cost for only necessary postsecondary education expenses." *Id.* After this cost component is determined, the court must next determine the amount the child "may reasonably be expected to contribute" to the payment of the costs in light of the child's financial resources. *Id.* § 598.21(5A)(*a*)(2). In determining a child's financial resources, the court considers "the availability of financial aid whether in the form of scholarships, grants, or student loans," as well as the "ability of the child to earn income while attending school." *Id.*

The subsidized amount subject to apportionment among the parents is then determined by subtracting the amount of the child's expected contribution from the postsecondary education expenses. *Id.* § 598.21(5A)(*a*)(3). However, an amount apportioned to a parent cannot exceed one-third of the total postsecondary education cost. *Id.*

*In re Marriage of Vannausdle,* 668 N.W.2d 885, 888 (Iowa 2003).

According to two documents, each entitled "2001–02 University of Iowa Revised Award Notification," the estimated cost of attendance for each child at the University of Iowa during the 2001–2002 school year was a little more than $12,000. This sum included tuition, fees, books and supplies, room and board, personal expenses, and transportation. *See id.* at 889 (recognizing "the actual and necessary costs of attending college exceed tuition, books, supplies, and a room and board plan," and incorporating personal expenses and transportation into those costs). As previously indicated, given the financial conditions of the parents, the children will be expected to pay substantially all of this cost.

█ In examining sources of funds the children might be expected to contribute, there is no evidence in the record either child received any scholarships, or has sufficient funds saved to cover the costs of their educations. *Cf. id.* at 887 (scholarships); *Rosenfeld,* 668 N.W.2d at 846 (funds gifted to student under the Uniform Transfers to Minors Act (UTMA) sufficient to cover costs of her college education). Both children, however, were given over $2200 in federal and state grants. In addition, Anthony was offered a $3500 federally subsidized Stafford loan, while

Angela was offered $2625. Again, given the meager financial situations of the parents, it is not unreasonable to expect Anthony and Angela to assume responsibility for repayment of these loans. *Cf. Vannausdle*, 668 N.W.2d at 890 ("loans should have been excluded from the student contribution component of the formula .... Implicit in the parties' approach is their mutual understanding ... loans should not be used to reduce their respective subsidy.").

■ For similar reasons, Anthony and Angela must be expected to work during the school year and summers to help finance their educations, and it appears both do so. Deborah testified Anthony worked twenty hours a week at the hospital as part of his work-study, and Angela worked full-time, earning $7.50 per hour at Wal–Mart. It is not unreasonable to expect both children to work at least part-time during the school year and full-time during breaks and the summer months. In doing so, both children can be expected to earn a substantial amount of money for college.[3]

■ In arriving at the expected contributions of the children, we do *not* consider the University's "award" of $3398 to Anthony, and $5213 to Angela, of a "PLUS (Parent) Loan." These "awards" are, in truth, merely offers for *Deborah or Robert* to assume loans, and therefore are possible *parental*, not expected *student* contributions. *In re Williams*, 253 B.R. 220, 222 n. 8 (Bkrtcy.W.D.Tenn.2000) ("The Federal PLUS (Parent Loan for Undergraduate Students) program provides a low-cost fi-

nancing option to help families fund the college education of a dependent student. The program allows *parents* to borrow up to the total cost to attend school less other financial aid received." (Emphasis added.)).

■ Subtracting the children's expected contributions from the postsecondary education expenses, we determine each child ought to be subsidized $300 per year by Robert. Robert's obligations to each child shall henceforth be paid in two equal installments of $150. The subsidies shall be payable to the respective child, his or her educational institution, or both, on August 15 and January 15 of each year. *See* Iowa Code § 598.21(5A)(*b* ); *Longman*, 619 N.W.2d at 371. Because Deborah is not presently under any legal obligation to pay a subsidy, until her responsibility is determined her contributions are wholly voluntary, and she is not entitled to any reimbursement. *Longman*, 619 N.W.2d at 371.

The subsidies awarded herein shall begin with the 2002–03 school year. Prior to the filing of this action Robert was under no obligation to subsidize his children's postsecondary education expenses; the subsidy we award to the children begins with the 2002–03 school year because this action commenced in July 2002. Because two years' worth of obligations has now accrued, Robert shall pay each child or his or her educational institution $600 within six months of the issuance of procedendo. Payment is conditioned upon the children's qualification for the subsidy. *See, e.g.,*

---

**3.** Although the university did offer the children work-study in specific dollar amounts, work-study is not a grant; work-study is nothing more than governmentally subsidized employment available to students should they find work in a qualifying job. *Accord Iowa State Dep't of Health v. Hertko*, 282 N.W.2d 744, 750 (Iowa 1979) (recognizing view that work-study is not a grant). Depending on the child, of course, the amount the university awards the student in available work-study funds does not necessarily reflect "the ability of the child to earn income while attending school." Iowa Code § 598.21(5A)(*a*)(2). The educational institution's financial aid package, while often relevant, is not in itself determinative of this ability.

Iowa Code § 598.21(5A)(*d*) (subsidy terminates "if the child fails to maintain a cumulative grade point average in the median range or above during [his or her] first calendar year" in school).

### C. Timeframe for Postsecondary Education Subsidies

██ The court of appeals ordered the subsidies should remain in effect as long as the children are *under* the age of twenty-two years. The statute, however, states that the applicable timeframe is *"between the ages of eighteen and twenty-two." Id.* § 598.1(8) (emphasis added). We therefore modify the decree as follows: Robert is responsible for Anthony and Angela's college expenses so long as each child is between the ages of eighteen and twenty-two. Given the traditional ages at which students attend college, the ages which define this timeframe should be read inclusively, i.e. students qualify so long as they are older than seventeen but less than twenty-three, to effect legislative intent. *See State v. Schultz*, 604 N.W.2d 60, 62 (Iowa 1999) ("The polestar of statutory interpretation is to give effect to the legislative intent of a statute.").

### IV. Conclusion

We find the amended decree did not require Robert to pay one-third of his children's college expenses, and, as a result, we do not reach Deborah's first assignment of error, i.e. whether *Longman* should be circumscribed to permit reimbursement to a parent who pays for a "defaulting" parent's subsidy. We affirm the court of appeals, with two modifications: Robert should provide Anthony and Angela $300 per child per academic year as a postsecondary education subsidy. Furthermore, each subsidy should apply so long as the child is between the ages of eighteen and twenty-two.

The costs of this action are taxed equally to both parties. We affirm the district court's award of attorney fees and do not award appellate attorney fees.

**DECISION OF COURT OF APPEALS AFFIRMED AS MODIFIED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND MODIFIED IN PART.**