# IN THE COURT OF APPEALS OF IOWA

No. 15-1418
Filed February 24, 2016

IN RE THE MARRIAGE OF STEPHANIE A. SHIPLEY
AND KEVIN SHIPLEY

Upon the Petition of
STEPHANIE A. SHIPLEY,
    Petitioner-Appellee,

And Concerning
KEVIN SHIPLEY,
    Respondent-Appellant.

_____

    Appeal from the Iowa District Court for Polk County, Jeanie Kunkle Vaudt,

Judge.


    A divorced father appeals a district court order requiring him to pay a

share of his daughter's postsecondary education.  **AFFIRMED.**


    Christina I. Thompson of Phil Watson, P.C., Des Moines, for appellant.

    Stephanie A. Shipley, Pleasant Hill, pro se appellee.


    Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Kevin Shipley, a divorced father, challenges the district court order enforcing the postsecondary-education-subsidy provision in the decree dissolving his marriage to Stephanie Shipley. He contends his obligation to pay a share of his daughter's college expenses ended when she repudiated him, failed to report her grades, and failed to maintain the median grade point average (GPA) specified in Iowa Code section 598.21F (2015).

Because the dissolution decree, accepting the parties' stipulation, did not invoke the provisions of section 598.21F, we agree with the district court's decision to hold Kevin responsible for one-third of his daughter's college expenses. We also affirm the award of trial attorney fees to Stephanie and deny Kevin's request for appellate attorney fees.

## I.    Facts and Prior Proceedings

Kevin and Stephanie Shipley filed a stipulated dissolution agreement with the district court on December 2, 2013. The court approved the agreement without revision on December 3, 2013, and issued the decree. The stipulation included the following provision:

> Q.    **POSTSECONDARY EDUCATION SUBSIDY**: The parties shall each pay one third of the total cost of each child's college education, regardless of whether the child attends a state university or a private institution. Each party's contribution shall include the cost of tuition, books and fees. Each party's contribution shall be paid directly to the institution if possible at the time the expense is incurred and always in advance of any deadlines imposed by the institution.

T.S., the eldest of their three children, started college in the fall of 2014 and sought payment from her father for his one-third share of her education expenses.

In her first year at college, specifically in her first semester, T.S. struggled academically. As a result, her GPA for the first calendar year fell below the median range for her freshman class. She also did not send her father grade reports. In fact, T.S. had little interaction with her father while at college. Their relationship was strained even before the dissolution. Either during her parents' divorce trial or shortly after, T.S. delivered a handwritten note to her father. In that communication, T.S. made clear she was not interested in maintaining a relationship with him at that time.

On May 11, 2015, Kevin applied for a ruling on the postsecondary subsidy. Kevin argued

> T.S. is not eligible for a post-secondary education [subsidy] awarded from Respondent because she has repudiated the Respondent in accordance to the terms of Iowa Code 598.21F(4). . . . The Respondent should not be ordered to contribute to Respondent's post-secondary education and requests this Court issue a ruling ordering the same.

Stephanie filed a response and requested an order determining Kevin's financial obligation for the 2014-2015 academic year as Kevin's payments were past due. Kevin filed an amended application arguing room and board for T.S. should not be included in the calculation of his payment, while also arguing T.S. failed to maintain a high enough GPA or to supply grade reports as required under section 598.21F(5). Stephanie filed an amended resistance arguing Kevin was

responsible for one-third of the postsecondary education and requesting attorney fees.[1]

Following a hearing, the district court found Kevin responsible for one-third of T.S.'s postsecondary education, including room and board, as required by the dissolution decree. The court ordered Kevin to pay $4806.99 toward T.S.'s 2014-2015 college expenses. The court also ordered Kevin to pay one-third of the total cost "each year [T.S.] attends college until [T.S.] reaches the age of twenty-three, absent mutual agreement by Stephanie and Kevin to a different arrangement or a proven substantial change in circumstances," subtracting any scholarships or grants while using semester billing statements. The district court also ordered Kevin to pay half of Stephanie's attorney fees and split the court costs equally between the parties.

Kevin appeals the district court's order concerning the postsecondary education subsidy and trial attorney fees. He also asks for appellate attorney fees. Stephanie did not file a brief on appeal.

## II.     Scope and Standards of Review

Our scope of review in this appeal from an equity action is de novo. *See In re Marriage of Russell*, 559 N.W.2d 636, 637 (Iowa Ct. App. 1996).

We review an award of attorney fees for an abuse of discretion. *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013).

---

[1] Kevin also then requested attorney fees.

### III.    Analysis

#### A. Proper Characterization of Action

First, Kevin argues the district court improperly reviewed his application as a modification request, requiring him to show a substantial change of circumstances from the time of the decree.  He contends his filing was not a modification, but an original adjudication of the postsecondary subsidy.  He relies on *In re Marriage of Mullen-Funderburk*, 696 N.W.2d 607, 611 (Iowa 2005), holding that where a decree has not established a fixed level of payment for college expenses, the determination of that obligation is an original action and it is "not necessary to show a substantial change of circumstances as in the usual modification."

Contrary to Kevin's contention, *Mullen-Funderburk* does not govern here. *Mullen-Funderburk* addressed the retroactive application of the postsecondary-education-subsidy statute to an original decree filed before July 1997.  *Mullen-Funderburk*, 696 N.W.2d at 611 (discussing then section 598.21(5A)(e), now section 598.21F(6)).  Here, the stipulations and the decree were filed years after the effective date of section 598.21F.  Moreover, the Shipleys' decree did fix a level of payment for each parent's obligation—"one third of the total cost of each child's college education."

But for a different reason, we find Kevin was not required to show a substantial change in circumstances.  A district court retains authority to interpret and enforce its prior decree.  *See In re Marriage of Morris*, 810 N.W.2d 880, 886 (Iowa 2012) (acknowledging a decree's property division is generally not

modifiable, but can be considered by the district court if the question is interpretation or enforcement of an existing provision); *see also Orvedal v. Orvedal*, 669 N.W.2d 89, 91 (N.D. 2003) (holding when uncertainties in the decree arise from subsequent events, clarification may be appropriate). "A decree for dissolution of marriage is susceptible to interpretation in the same manner as other instruments." *In re Marriage of Russell*, 559 N.W.2d 636, 637 (Iowa Ct. App. 1996). We note Stephanie joined Kevin in asking the district court to clarify what Kevin owed under the challenged provision of the decree. Accordingly, we conclude Kevin was not required to show a change in circumstances, material or substantial, to allow the district court to clarify the terms of the postsecondary-education-subsidy provision of the decree.

## B. Applicability of Iowa Code section 598.21F

Kevin asks us to reverse the district court's order requiring him to pay T.S.'s postsecondary-education expenses because she repudiated him as described in section 598.21F(4)[2] and failed to meet the student obligations in section 598.21F(5).[3] The district court concluded the decretal court did not award a postsecondary-education subsidy as contemplated by section 598.21F.

---

[2] Iowa Code section 598.21F(4) states:
**Repudiation by child.** A postsecondary education subsidy shall not be awarded if the child has repudiated the parent by publicly disowning the parent, refusing to acknowledge the parent, or by acting in a similar manner.

[3] Iowa Code section 598.21F(5) reads:
**Obligations of child.** The child shall forward, to each parent, reports of grades awarded at the completion of each academic session within ten days of receipt of the reports. Unless otherwise specified by the parties, a postsecondary education subsidy awarded by the court shall be terminated upon the child's completion of the first calendar year of course instruction if the child fails to maintain a cumulative grade point average in the median range or above during that first calendar year.

Instead, "[t]he parties voluntarily agreed to provide postsecondary education support for [T.S] under Stipulation term Q quoted above. The [decretal] court merely approved what Stephanie and Kevin had already decided." The district court declined to apply the repudiation or grade provisions of section 598.21F to defeat the intent of the decretal court in approving and adopting paragraph Q of the parties' stipulation.

Although the Shipleys' stipulations and decree do not mention section 598F.21, Kevin argues the statutory provision serves as a "'status quo' baseline" for determining a divorced parent's obligations to pay for their child's college costs. He asserts

> [t]he most logical way to treat paragraph Q would be as a cap on liability that expanded the parties' obligation, by agreement approved by the court, to cover a private institution (as opposed to limiting the cap to the tuition of a public university, as stated in the statute) while leaving all of the other provisions of Iowa Code section 598.21F intact, including the GPA and repudiation sections.

He cites *In re Marriage of Neff*, 675 N.W.2d 573, 577-78 (Iowa 2004) to support his position.

Kevin's reliance on *Neff* is misplaced. The stipulation in that case expressly stated it was "pursuant to chapter 598.1 and 598.21(5A)." Consequently, *Neff* explicitly interpreted the predecessor statute to section 598.21F: "At issue in this appeal is Iowa's postsecondary education subsidy statute, which allows a court to order a 'postsecondary education subsidy' if good cause is shown. Iowa Code § 598.21(5A) (2001)." *Neff*, 675 N.W.2d at 575.

By contrast, the Shipleys' stipulation, paragraph Q, incorporated into the decree, makes no reference to section 598.21F. The decretal court did not make

a finding of good cause to award the subsidy. *See* Iowa Code § 598.21F(1). And as Kevin notes, the stipulated-decree exceeds statutory requirements by directing each parent to "pay one-third of total cost of each child's college education, *regardless of whether the child attends a state university or a private institution.*" (Emphasis added.) *Compare* Iowa Code § 598.21F(2)(a) ("The court shall determine the cost of postsecondary education based upon the cost of attending an in-state public institution . . . ."). The Shipleys' stipulated decree also bound the parties to paying one-third of the costs of postsecondary education for T.S.'s two younger siblings, approximately eight and ten years old at the time of the dissolution. *Compare* Iowa Code § 598.21F(2) (listing age and ability of the child as criteria for good cause to awarding the subsidy).

Kevin suggests the decree is contrary to law if it is not read as incorporating subsections 598.21F(4) and (5), notwithstanding the parties' lack of citation to them in the stipulation presented to the court. *See In re Marriage of Jones*, 653 N.W.2d 589, 593-94 (Iowa 2002) (explaining parties' stipulation is not binding on the court and if stipulation is unfair or contrary to law, the court has authority to reject it). We disagree the decree must automatically incorporate those statutory provisions. Our supreme court has not declared that those provisions operate as a baseline for any postsecondary-education subsidy. In fact, the court has observed, "In the usual context, parties to a dissolution are free to make agreements regarding the future college expenses of their children, which the courts may then enforce." *In re Marriage of Rosenfeld*, 668 N.W.2d 840, 848 (Iowa 2003). Divorcing parents may agree, equitably and in the best

interest of their children, that they would be obliged to pay a share of college expenses even if a child repudiates them, fails to provide them progress reports, or earns a GPA below the median.

Nothing in the decree adopting the parties' stipulation indicates the decretal court intended to superimpose the caveats in subsections 598.21F(4) and (5) onto the parties' agreement concerning the future college expenses of their children. *See Jones*, 653 N.W.2d at 594 ("[I]in ascertaining the rights of the parties after final judgment, it is the intent of the district court that is relevant, not the intent of the parties."). Because we find no intent in the decree to the contrary, we affirm the district court's order.

### C. Room and Board

Kevin contends that if he is required to pay a postsecondary-education subsidy for T.S., the calculation of his share should exclude room and board, as well as "anticipated personal expenses," because the language of the stipulation adopted by the decree did not incorporate those costs. The stipulation stated: "The parties shall each pay one third of the total cost of each child's college education, regardless of whether the child attends a state university or a private institution. Each party's contribution shall include the cost of tuition, books and fees." Kevin interprets the second sentence as all inclusive.

The district court reached a different conclusion, reading the word "total" as reasonably encompassing room and board, in addition to the categories of tuition, books, and fees specified in the stipulation. The court's calculation of

Kevin's share also included "anticipated personal expenses" as determined by the academic institution. We agree with the district court's interpretation.

A stipulation in a dissolution proceeding is a contract between the parties that becomes final when approved by the court. *In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987). A decree based on a stipulation is construed in accord with its evident intent, giving effect to "that which is clearly implied as well as to that which is expressed." *In re Marriage of Goodman*, 690 N.W.2d 279, 283 (Iowa 2004).

Critical to Kevin's challenge is the term "include" as used in describing each party's contribution. "Include" can be used as a term of enlargement or as a word of limitation or restriction. *See Eyecare v. Dep't. of Human Servs.*, 770 N.W.2d 832, 837 (Iowa 2009) (discussing statutory construction). The debate is whether the items that follow the word "include" are simply illustrative or stand as an exhaustive list. *Id.* at 838. The correct interpretation depends on the entire context. *Id.*

In this case, the context is an agreement by the parties to each pay one-third of the "total cost" of their children's college education. "Total" means "whole; not divided; full; complete." Black's Law Dictionary 1627 (9th ed. 2009). Our supreme court has observed that "the actual and necessary costs of attending college exceed tuition, books, supplies, *and a room and board plan*." *In re Marriage of Vannausdle*, 668 N.W.2d 885, 889 (Iowa 2003) (emphasis added). Iowa courts are not alone in this recognition. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955, 971 (N.D. Cal. 2014) (describing

"cost of attendance" as a school specific calculation "including the total cost of tuition and fees, room and board, books and supplies, transportation, and other expenses related to attendance") *overruled on other grounds by O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1054 (9th Cir. 2015).

Given the stipulation's reference to total cost and the decretal court's adoption of the stipulation without changes, we interpret the items listed after the word "include" as merely illustrating items included in the overall price tag for T.S.'s college education. The language cannot be read to limit Kevin's subsidy to tuition, books, and fees.  We affirm the district court on this point.

**D.  Ability to Pay**

Kevin further argues T.S. has the ability to pay for her college attendance using scholarships, student loans, bonds she cashed in from a grandparent, and "her own ability to earn approximately $5,000.00 per year in wages."  Kevin also asks us to remand for a determination of his ability to pay.

Kevin relies on 598.21F to support both of these arguments, noting the court must determine the child's ability to pay before the parent's ability to pay. As discussed above, the postsecondary-education subsidy in this decree is not rooted in section 598.21F.  The parties reached their own agreement they would each pay for one-third of the total cost of their children's college expenses without any conditions on the children's ability to pay themselves.  That agreement was accepted by the court issuing the decree.   We decline to remand for a determination of Kevin's ability to pay.

### E. Attorney Fees

Kevin also challenges the award of trial attorney fees and asks for appellate attorney fees. The award of attorney fees depends on the respective abilities of the parties to pay. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). The record shows, at the time of the dissolution, Kevin had an imputed annual income of $53,497 and Stephanie had an annual income of $38,200. We find Kevin is able to pay one half of Stephanie's trial attorney fees in this action.

We have broad discretion in awarding appellate attorney fees. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the parties' positions on appeal. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Because we did not find his position on appeal to be meritorious, we decline to grant Kevin appellate attorney fees. We assess the costs to Kevin.

**AFFIRMED.**