# IN THE COURT OF APPEALS OF IOWA

No. 16-1794
Filed July 6, 2017

IN RE THE MARRIAGE OF LYNN MARIE LARSEN
AND ROGER WAYNE LARSEN

**Upon the Petition of**
**LYNN MARIE LARSEN,**
      Petitioner-Appellee,

**And Concerning**
**ROGER WAYNE LARSEN,**
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Story County, Michael J. Moon, Judge.

Roger Wayne Larsen appeals the district court's order requiring him to pay a postsecondary education subsidy. **AFFIRMED.**

Erin M. Carr of Carr & Wright, P.L.C., Des Moines, for appellant.

Nicole S. Facio of Newbrough Law Firm, L.L.P., Ames, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

On H.M.L.'s first day of class at Iowa State University, her divorced parents returned to court to litigate their required contributions toward her postsecondary education expenses under Iowa Code section 598.21F (2016). The district court ordered each parent to pay $6629.73 toward their daughter's education costs. Roger Larsen appeals that order, arguing the district court erred in calculating her total college expenses and did not require an adequate contribution from H.M.L. Because we find good cause existed for the subsidy ordered, we affirm.

## I.    Facts and Prior Proceedings

Roger Larsen and Lynn Jones were married in 1995 and divorced in 2015. Lynn currently works in the residence department at Iowa State, earning approximately $77,000 annually. Roger works for the Iowa Department of Transportation and also earns income from the military reserves, for a total of $110,000 annually. They have three children, but only the college subsidy for their daughter H.M.L. is at issue in this case.

In entering the dissolution decree in August 2015, the district court adopted the parties' partial stipulation, including a postsecondary education subsidy provision.[1] In regard to the postsecondary education subsidies for their three children, Roger and Lynn stipulated:

> Postsecondary education subsidy. In the event any child
> pursues a course of study or training beyond high school education

---

[1] Roger appealed the allocation of income tax exemptions, equalization payment, distribution of marital property, and support provisions of the decree. *See In re Marriage of Larsen*, No. 16-1794, 2016 WL 5408073 (Iowa Ct. App. Sept. 28, 2016). Postsecondary education subsidies were not at issue in the previous appeal. *Id.*

under the circumstances contemplated by Iowa Code section 598.21F, each of the parties shall contribute toward the costs of that study or training as provided for by section 598.21F(c). The parties' custodial 529 accounts[2] for each child shall first be used to discharge their share of their contributions under this provision but neither party shall be able to avoid contribution based upon any claims of alienation or estrangement. These accounts shall be equally divided with each party having an account for each child. The value[] on [this] account[] as of March 31, 2015 was as follows: . . . H.M.L. ($ 63,107.24). . . . The parties shall be free to continue to add funds to these accounts but are not required to do so, however the balances on each of these accounts should not be reduced below half of the amounts above unless due to market conditions. The parties acknowledge that these accounts are for the children and will not be used for another purpose or withheld from any of the children.

One year later, Lynn filed an application for a hearing to determine the postsecondary education subsidy for H.M.L.'s college costs. Lynn filed the application because H.M.L. accepted admission to Iowa State University and began classes on August 22, 2016. The court held a hearing on H.M.L.'s postsecondary education subsidy, also on August 22, 2016. Both parties submitted evidence related to the total costs of H.M.L.'s attendance at Iowa State.

---

[2] A 529 account is a tax-free college savings account used to pay for higher education expenses. *See* 26 U.S.C. § 529.

Roger urged the district court to calculate the total cost of attendance as follows:

| Tuition | $7098.00 |
|---|---|
| Room | $4487.00 |
| Board | $3831.00 |
| Fees | $1278.40 |
| Books | $ 588.80 |
| Sorority dues | $0 |
| Cash allowance | $0 |
| Total | $16,694.40[3] |

Using his $16,694.40 figure as the total cost of attendance, Roger claimed his postsecondary education subsidy should total $0 for H.M.L's education. According to Roger, the district court should have subtracted $6025.00 in scholarships; $5500 in loans; $2869.11 in H.M.L's existing financial resources;[4] and $6000 representing H.M.L.'s potential income. According to Roger, adding in the potential income would result in a surplus of $3699.71 for H.M.L., and therefore, neither he nor Lynn need to pay a postsecondary education subsidy.

---

[3]Although Roger's trial exhibit portrayed the total as $16,694.40, his cost estimates actually add up to $17,283.20, a difference of $588.80. Thus, while Roger purports to include expenses for books, he did not account for books in his total.

[4] Roger paid $750 in child support to Lynn for the summer of 2016. He claims that because that amount would not have been paid if H.M.L. did not go to college, it should be added to the $2119.11 in H.M.L.'s checking account as a financial resource.

The district court, in its October 5, 2016 amended order, calculated the total cost of attendance as follows:

| | |
|---|---|
| Tuition | $7098.00 |
| Room | $4487.00 |
| Board | $3830.00 |
| Fees | $1365.40 |
| Books | $ 588.80 |
| Sorority Dues | $1920.00[5] |
| Cash Allowance | $ 600.00 |
| Total | $19,889.20 |

The district court determined tuition and room and board costs based on the Iowa State U-bill. The court included sorority costs for the entire 2016-17 school year. It then took the amount spent on books for the first semester, $294.40, and doubled it to reach the total book cost for the entire year.

After settling on $19,889.20 as the actual cost of attendance, the district court subtracted H.M.L's $5520 in scholarships, leaving a balance of $14,369.20. The district court divided this number in half, but because that amount—$7184.60—was higher than the allowed one-third of the total cost, the court ordered Roger to pay $6629.73, which is one-third of the $19,889.20 total cost of attendance determined above. The district court did not deduct the balance of

---

[5] The court reached this number by totaling new member fees from fall 2016 and adding ongoing sorority membership dues.

H.M.L.'s checking account, the available (but declined) student loan, or her potential income from employment.

Roger appeals the district court's amended order determining the postsecondary education subsidy for H.M.L. Specifically, Roger claims the district court incorrectly calculated H.M.L.'s actual cost to attend Iowa State, incorrectly included sorority dues and a cash allowance in the cost of attendance, and failed to subtract H.M.L.'s offered student loan, scholarships, checking balance, and potential earnings from the cost of attendance.

**II.      Scope and Standard of Review**

We review this equitable action de novo. *In re Marriage of Vaughan*, 812 N.W.2d 688, 692 (Iowa 2012).

**III.      Analysis**

**A.      Postsecondary Education Subsidy**

A court may order parties to a dissolution of marriage to pay a postsecondary education subsidy for their child's college expenses if good cause is shown. Iowa Code § 598.21F(1). "In determining whether good cause exists, the court must consider the age and ability of the child, the child's financial resources, whether the child is self-sustaining, and the financial situation of the parents." *In re Marriage of Goodman*, 690 N.W.2d 279, 282-283 (Iowa 2004); *see also* Iowa Code § 598.21(F)(2). If good cause is shown, the court determines the amount of the subsidy based upon the reasonable costs for necessary postsecondary education expenses, subtracting what the child may reasonably be expected to contribute, and then apportioning the remaining costs between the parents in an amount not to exceed thirty-three and one-third

percent of the total cost of postsecondary education. *See* Iowa Code § 598.21F(2)(a-c). Roger's appeal concerns the amount he was ordered to pay.

### 1. Calculating Overall Cost of Attendance

We first address the cost of attendance. "The actual and necessary costs of attending college exceed tuition, books, supplies, and a room and board plan. . . . [A] college education includes social, cultural, and education experiences outside the class room that impose additional expenses for students." *In re Marriage of Vannausdle*, 668 N.W.2d 885, 889 (Iowa 2003).

Roger contends the actual cost of H.M.L.'s attendance at Iowa State should be calculated as $16,694.40. But a complete review of the record shows his number is incorrect. The district court amended its original order to include $588.80 in book costs at Roger's request. But Roger's *total* calculation does not include the costs of books for either semester. The district court's inclusion of $588.80 for books in the cost of attendance was proper.

Roger next argues the district court should not have included the $87 in total fees for two fall 2016 specific classes because they are one-time fees. The district noted that although these specific classes do indeed involve one-time fees, the nature of H.M.L.'s major will result in other courses with one-time fees. The court therefore included the $87 fees for the spring semester to account for these future classes. We agree with the district court's fee determination.

### 2. Including Sorority Dues and Cash Allowance

Roger reserves his harshest criticism for the district court's inclusion of sorority dues and a $600 cash allowance in the total cost of his daughter's attendance at Iowa State. When deciding to incorporate the price of H.M.L.

joining a sorority in her overall college expenses, the district court relied on *Goodman* for the proposition that "a college education is not limited to what is learned in the classroom; it includes social, cultural, and educational experiences outside the classroom." 690 N.W.2d at 284; *accord Vannausdle*, 668 N.W.2d at 889.

Roger argues the facts in *Goodman* are distinct from the circumstances in this case. In *Goodman*, the parents agreed to pay for sorority dues for their daughter because they believed "sorority life" was a necessary part of her college experience. 690 N.W.2d at 284. Because he and Lynn have not reached any kind of agreement regarding the essential aspects of A.M.L.'s social life at college, Roger contends neither sorority dues nor the extra allowance are legitimate college costs.

We decline to give *Goodman* such a narrow reading. The lesson to be gleaned from *Goodman* and *Vannausdle* is that reasonable expenses associated with the social side of college may be included in the total costs of attendance. For H.M.L., those extracurricular expenses cover joining a sorority; for other students, the expenses may be the costs associated with a science club or intramural sports. While sorority dues may not always be a reasonable and necessary cost of attending college, like the district court, we find they are in this case. *See id.* (finding parents had means to cover expenses for daughter's experiences outside the classroom).

Roger's claim about the district court's inclusion of a $600 cash allowance fails on similar grounds. Both parties have the financial means to support their

child's allowance. The district court properly included H.M.L's sorority dues and the cash allowance in the costs of attendance.

### 3. Determining Child's Reasonable Contribution

After fixing the cost of attendance, the court next determines the amount the child "may *reasonably* be expected to contribute." Iowa Code § 598.21F(2)(b) (emphasis added); *Vannausdle*, 668 N.W.2d. at 888. Upon review of the record, the district court used the correct scholarship amount in its calculations. Specifically, H.M.L. was required to estimate the total of one of her scholarships. She reported her "Dollars for Scholars" scholarship to Iowa State, and the university then applied $263 to H.M.L.'s fall term U-Bill when it received the actual money. A similar "Dollars for Scholars" credit of $263 should appear on H.M.L.'s spring 2017 U-Bill. Roger's assertion there is an additional scholarship worth $500 is not supported by the record. We therefore decline to modify the postsecondary education subsidy as it relates to fees, books, or scholarships.

H.M.L. was offered $5500 in unsubsidized loans from the federal government but declined them. H.M.L. also had some cash on hand in her checking account. Roger argues these resources must be subtracted under section 598.21F(2). We disagree.

Our supreme court has held that while student loans *may* be considered as part of a student's contribution, doing so is not mandatory in every case. *See Vannausdle*, 668 N.W.2d 889-90 (holding student loans are not included where it is contrary to the wishes of the parties) (emphasis added); *see also Vaughan*, 812 N.W.2d at 695 (holding student loans would not be considered where a party

fails to raise their inclusion). Roger raised the student-loans issue here, and the parties disagree about their inclusion in H.M.L.'s contribution. Roger testified, although he agreed the purpose of the 529 account for H.M.L. was to ease her financial burden when attending college, he still wished for her to "contribute and have some proverbial skin in the game." Lynn testified both that H.M.L. consulted her about taking the student loan she was offered and that H.M.L. ultimately declined the loan because it was not needed. Both parties agree the purpose of H.M.L.'s 529 account was to assist with her college education expenses.

We begin by noting H.M.L. indeed has "skin in the game." The district court order mandates Roger and Lynn to pay one-third of her postsecondary education expenses. The remaining responsibility falls to H.M.L. It is true most of H.M.L.'s contribution is covered by scholarships, but those funds do not cover all of her expenses. H.M.L. will be personally responsible for some of her college costs.

*Vannausdle* and *Vaughan* recognize certain facts warrant not counting loans towards the student contribution. The facts here fall into that category. The parents have saved more than $63,000 to ease H.M.L.'s financial burden in attending college. They stipulated this money would not be used for any other purpose, nor withheld from the child. The parents also stipulated the respective 529 accounts would be applied only for educational purposes for each child. H.M.L. will not be self-sustaining while attending Iowa State. Given the nature of attending college, H.M.L. will incur expenses that require her to use her own financial resources. Further, both parents testified the purpose of their

aggressive college saving was to benefit their children and ease their financial burden when attending college. Under these facts, it would be inequitable to count *offered but unaccepted* loans toward the student's contribution.

Roger asserts H.M.L. can work ten hours a week during the academic year and forty hours a week during the summers at ten dollars per hour to pay for her education expenses. There is no indication in the record that such jobs were available. At most, the record shows H.M.L. had been offered a position for five hours per week for seven dollars and twenty-five cents per hour. The district court noted these earnings "will be minimal." And H.M.L. will still have to cover one-third of her expenses related to college. Roger's assertion of H.M.L.'s earning potential "is too speculative to impute" towards her contribution. *See, e.g.*, *In re Marriage of McDermott*, No. 04-1033, 2005 WL 2216982, at *3 (Iowa Ct. App. Sept. 14, 2005). Because Roger's figure for H.M.L.'s earning potential is too speculative, we reject its application to the postsecondary education subsidy.

Finally, we decline to subtract the $750 in child support Roger paid to Lynn for support of H.M.L. while H.M.L. was living at Lynn's home before H.M.L. attended Iowa State. This money was to accommodate *Lynn* for expenses associated with H.M.L. living at Lynn's home. It cannot now be used to pay for postsecondary subsidy expenses.

### B. Appellate Attorney Fees

Lynn requests $2500 in appellate attorney fees. She argues Roger should pay her attorney fees because she had to bring the action even though the parties have substantial funds available in the 529 plans to pay the

postsecondary education subsidy ordered by the court without any additional financial hardship. We decline to order Roger to pay Lynn's appellate attorney fees. *See Vaughan*, 812 N.W.2d at 696. Costs are assessed to Roger.

**IV.      Conclusion**

For the foregoing reasons, we decline to modify the district court's determination of postsecondary education subsidies. We also decline to award appellate attorney fees.

**AFFIRMED.**