# IN THE COURT OF APPEALS OF IOWA

No. 19-1204
Filed April 15, 2020

IN RE THE MARRIAGE OF JENNIFER LYNN BEHYMER
AND BUTCH E. BEHYMER

Upon the Petition of
JENNIFER LYNN BEHYMER, n/k/a JENNIFER LYNN SCHUTTINGA,
    Petitioner-Appellant,

And Concerning
BUTCH E. BEHYMER,
    Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Mahaska County, Dan Wilson,

Judge.


        Jennifer Schuttinga appeals the modification to the decree dissolving her

marriage to Butch Behymer.  **AFFIRMED.**


        Cynthia D. Hucks of Box & Box Attorneys at Law, Ottumwa, for appellant.

        Heather M. Simplot of Harrison, Moreland, Webber, Simplot & Maxwell,

P.C., Ottumwa, for appellee.


        Considered by Bower, C.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

At the time the parties' marriage was dissolved in 2005, the parties were given joint legal custody of their minor child, B.B. Jennifer Behymer, now known as Jennifer Schuttinga, was granted physical care of B.B. One year later, the decree was modified to place physical care of B.B. jointly with the parents.[1] In 2017, Jennifer filed this modification action seeking physical care of B.B. The father, Butch Behymer, filed a counterclaim asking that he be awarded physical care. Following trial, the district court modified the original decree to grant Butch physical care. Jennifer appeals, arguing placing physical care with Butch is not in B.B.'s best interest. Alternatively, she argues she should receive more visitation time. Both parents request appellate attorney fees.

We review marriage dissolution proceedings de novo. Iowa R. App. P. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). "On appeal, we give weight to the fact findings of the trial court but are not bound by them." *Larsen*, 912 N.W.2d 448. Further, "[w]e recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" *In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006) (quoting *In re Marriage of Walters*, 575 N.W.2d 739, 740 (Iowa 1998)).

"A party seeking modification of a dissolution decree must prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa

---

[1] The decree was further modified in 2010, but that modification did not make substantial changes relevant to the issues in this decision.

2016). And "[t]he changed circumstances affecting the welfare of children and justifying modification of a decree 'must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.'" *Id.* (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). The party seeking modification of a decree's custody provisions must also prove a superior ability to minister to the needs of the child. *Id.*

Jennifer does not dispute that a substantial change of circumstances warranted modifying the custody decree. Instead, she argues placing physical care of B.B. with Butch is not in B.B.'s best interest. Once it has been determined joint physical care needs to be modified, "[t]he parent who can administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives is chosen as primary physical care giver." *In re Marriage of Walton*, 577 N.W.2d 869, 871 (Iowa Ct. App. 1998).

On our de novo review of the record, we reach the same conclusion as the district court that there has been a substantial change of circumstances warranting modification and Butch having physical care of B.B. is in her best interest. The record shows Butch has had a stable residence for B.B. Butch has been married to another woman, Amanda, since B.B. was young, and B.B. has a close relationship with both Amanda and B.B.'s half-sibling.[2] Butch has been actively involved in B.B.'s life and activities as well as in the community, serving as a volunteer firefighter and serving as president of the local little league for several

---

[2] B.B.'s half-sibling is the child of Butch and Amanda

years. He deer hunts with B.B. and has helped coach her sports teams over the years. He has also been consistent in setting and enforcing rules in his home.

On the other hand, Jennifer has not been as stable. She has moved multiple times in the years leading up to the modification action. Most recently, Jennifer moved out of the school district B.B. has always attended, requiring B.B. to drive thirty to forty minutes each way to attend school and extracurricular activities,[3] often resulting in traveling late at night and cutting down on B.B.'s ability to get enough sleep. If Jennifer received physical care, it would require B.B. to change schools. Jennifer has also had multiple boyfriends over that same period. Some of the boyfriends have had criminal records and/or had a volatile relationship with Jennifer. She has obtained a no-contact order against one of her former boyfriends. Moving into and out of the homes of those boyfriends has been part of the cause of her frequent moves. Since Jennifer had shared physical care of B.B., Jennifer's frequent moves resulted in frequent moves for B.B. The most recent move to a different school district was so Jennifer could move in with her boyfriend, now fiancé.

In addition, Jennifer has struggled with depression and drug use. She has adequately addressed her depression issues, but still continues to be overwhelmed by day-to-day life. She also has issues with marijuana usage, which she continues to minimize. While the modification proceedings were pending, Jennifer's previous employer fired her for using her coworker's credit card at a gas station without the coworker's permission. She pled guilty to and received a

---

[3] At the time of trial, B.B. was fifteen years old and had a school permit.

deferred judgment for a misdemeanor criminal charge as a result. She also received a deferred judgment for operating while intoxicated in 2010.

In support of her arguments at trial and on appeal, Jennifer relies heavily on B.B.'s testimony that B.B. would like Jennifer to have physical care of her. In determining the weight to be given to a child's wishes, we consider the following factors: (1) the child's age and educational level; (2) the strength of the child's preference; (3) the child's relationship with family members; and (4) the reasons the child gives for the child's decision. *McKee v. Dicus*, 785 N.W.2d 733, 738 (Iowa Ct. App. 2010). The child's preference is entitled to less weight in a modification action than would be given in an original custody proceeding. *In re Marriage of Thielges*, 623 N.W.2d 232, 239 (Iowa Ct. App. 2000).

At trial, Butch and Amanda maintained the decision to change homes, and then schools, stemmed from B.B.'s desire to be near her current boyfriend. The district court had the benefit of observing the parties while they testified, including B.B. Referencing B.B's "reasonably high maturity level," the court gave weight to her preference and the reasons identified for her choice. Yet even after considering the "sincere" concerns raised by her, her current preference failed to trump the district court's reservations about the proven instability of Jennifer. Remaining in Butch's care allows B.B. to maintain her good relationship with her stepmother and half-sibling as well as staying in the same school system she has attended her entire life where her long-time best friends go to school and where she excels. Under these circumstances, B.B.'s preference does not overcome the other factors weighing in favor of placing physical care with Butch

Jennifer's remaining arguments point to specific incidents she claims show Butch having physical care of B.B. is not in B.B.'s best interest. Jennifer claims the following as a basis for granting physical care to her: (1) Butch refused to provide health insurance cards to her; (2) Butch and/or Amanda changed certain medical and school forms, or allowed others to change them, so as to exclude Jennifer from the records; (3) Butch befriended Jennifer's ex-boyfriends and others in order to gain information about Jennifer; and (4) Butch allowed a man who had acted inappropriately toward B.B. to be at Butch's house after learning of the incident.

As for the health insurance card issue, the evidence established that health insurance is provided for B.B. through Amanda's employment. The evidence also established Butch sent Jennifer photos of the insurance cards "[s]everal times." We find no significant merit to this criticism.

In terms of the medical and school records issue, there was no credible evidence supporting Jennifer's claim. While there may have been confusion within the school offices stemming from Butch and Amanda enrolling their child in the same school as B.B., the evidence established that problems, if any, of Jennifer not showing in the records as B.B.'s mother was a mistake made by the school staff and not caused by any action or inaction of Butch or Amanda.

With regard to the claim Butch befriended others in order to gather information on Jennifer, Jennifer articulates no compelling reason why this allegation, even if true, should result in her being awarded physical care over Butch. Given Butch's claim Jennifer repeatedly threatened to take him to court regarding custody, it is not all that surprising that he may contact people that had

contact with Jennifer, as those people would be potential witnesses in the event further proceedings were initiated, which they were.

Finally, regarding the claim Butch allowed a man who had acted inappropriately toward B.B. to return to Butch's home, both Butch and Amanda testified when B.B. reported the event to them, they refused to allow the man back into their home. When the man recently appeared at their home uninvited, Butch did not forcefully demand he leave, but he "shooed him out" soon after he arrived. Under these circumstances, we cannot criticize Butch's behavior to the extent it warrants placing physical care with Jennifer rather than Butch.

With regard to the above-referenced complaints lodged by Jennifer, besides the unsubstantiated or embellished nature of them as described, we note they are generally episodic and isolated events. In contrast, Jennifer's issues of being overwhelmed by day-to-day life, lack of stability in housing, and moving herself and B.B. in and out of her boyfriend's homes are more long-term systemic issues. While Jennifer appears to have stabilized to some degree in her current relationship, the fact remains that the shared physical care arrangement is no longer viable and placing physical care with Butch is appropriate, given that he has a long history of stability and remaining with Butch will permit B.B. to remain in the school where she has been her entire school career and where she has done well.

In the district court's order, Jennifer was granted visitation every other weekend, on alternating holidays, and for extended time in the summer. Jennifer's request to modify the visitation provisions is denied. The distance between the parents has already caused disruption to B.B. and is one of the contributing factors to the modification. Due to that distance, mid-week or other visitation beyond the

visitation ordered is not warranted. With that said, we, like the district court, encourage the parties to work together to find a mutually-agreeable visitation schedule, especially in light of the fact B.B. is now of driving age. An agreed-upon schedule may exceed or differ from that set forth in the district court's order.

Finally, both parties request an award of appellate attorney fees.

Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

*In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993)). Under the circumstances, we decline to award appellate attorney fees. Costs are assessed to Jennifer.

**AFFIRMED.**