# IN THE SUPREME COURT OF IOWA

No. 16–1794

Filed May 25, 2018

**IN RE THE MARRIAGE OF LYNN MARIE LARSEN AND ROGER WAYNE LARSEN**

Upon the Petition of
**LYNN MARIE LARSEN,**

      Appellee,

And Concerning
**ROGER WAYNE LARSEN,**

      Appellant.

---

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Story County, Michael J. Moon, Judge.


A father requests further review of a court of appeals decision affirming award of a postsecondary education subsidy. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**


Erin M. Carr of Carr & Wright, P.L.C., Des Moines, for appellant.


Nicole S. Facio of Newbrough Law Firm, L.L.P., Ames, for appellee.

**WIGGINS, Justice.**

In this case, we consider Lynn and Roger Larsen's parental responsibility for postsecondary education for their daughter following the dissolution of their marriage. As part of the dissolution proceedings, the parties entered into a partial stipulation regarding financial contributions toward their daughter's postsecondary education. When their daughter began to attend college at Iowa State University (Iowa State), they could not agree on the proper amount owed by each parent to support her education. On Lynn's motion and after an evidentiary hearing, the district court entered an order requiring the parents to each pay $6629.73 toward their daughter's education for the 2016–2017 school year.

Roger challenges the amount of postsecondary education subsidy the court ordered. Roger claims the court improperly calculated the reasonable costs for only necessary expenses by failing to consider actual costs and by improperly including sorority dues and a cash allowance. With respect to the daughter's available resources, Roger argues the court failed to include the full amount of scholarships awarded, failed to include available but unaccepted unsubsidized student loans, and failed to include an amount for income that could be generated by the daughter from part-time employment during the school year and summer employment.

We transferred the case to the court of appeals. The court of appeals affirmed. We granted further review. For the reasons expressed below, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand.

## I. Factual and Procedural Background.

Roger and Lynn Larsen married in 1995 and divorced in 2015. They have three children, including a daughter named H.M., who was born in October of 1997. H.M. enrolled in Iowa State for the 2016–2017 school year. Lynn earns approximately $77,000 a year from her job at Iowa State, while Roger earns approximately $110,000 per year from his job with the Iowa Department of Transportation and from his service in the military reserves.

During the course of their marriage, Lynn and Roger set aside funds for each of their three children for educational expenses in § 529 accounts. *See* I.R.C. § 529 (2012) (establishing tax-free educational accounts for college expenses). The balance for H.M. was $63,107.24 on March 31, 2015.

As part of the dissolution proceedings, Lynn and Roger entered a partial stipulation. Of importance, the partial stipulation stated in the event any of the three children attended a course of study or training beyond high school as contemplated by Iowa Code section 598.21F (2015), each of the parents must contribute to the applicable costs. The partial stipulation further stated the § 529 accounts for each child must first be used to discharge Lynn's and Roger's respective shares of their postsecondary education subsidy contributions. They "acknowledge[d] these accounts are for the children and will not be used for any other purposes or withheld from any of the children." The partial stipulation stated Lynn and Roger could not avoid the obligation to provide a postsecondary education subsidy based upon claims of alienation or estrangement. The district court incorporated the partial stipulation into the divorce decree.

The following year after the dissolution, H.M. began her education at Iowa State. H.M. contemplates a five-year course of study at Iowa State in architecture. Lynn filed an application for a hearing to determine the postsecondary education subsidy owed by each party.

At the August 22, 2016 hearing, Lynn offered testimony and presented exhibits. Lynn provided an Iowa State financial award document that shows $20,000 as the estimated cost of attendance for the 2016–2017 school year. This document projected $8219 in tuition and fees, $8356 in housing and meals, $995 in books and supplies, and $2430 in anticipated personal expenses. Lynn also provided a shopping sheet by Iowa State that shows $19,750 as the estimated cost of attendance for the same school year. Lynn also offered a U-bill that reflects the actual cost of attendance for fall 2016.

Lynn presented evidence H.M. had joined a sorority for the 2016–2017 school year. Lynn testified H.M. had been offered a part-time, five-hours-per-week job at minimum wage.

Roger also offered testimony and presented exhibits. He testified he and H.M. are estranged. Roger provided exhibits showing H.M. has $2119.11 in her bank account and an outstanding loan of about $15,000 on her automobile. From the total cost of attendance, Roger subtracted scholarships and loans available to H.M., $6000 in H.M.'s potential income from part-time employment during the school year and summer employment, $750 in child support, and $2119.11 in H.M.'s bank account.

As a result of Roger's calculations, neither Lynn nor Roger would be obligated to pay a postsecondary education subsidy for H.M. Roger testified the parental contribution should be zero because his calculations showed there would be a surplus. He did not include

sorority dues and a cash allowance in his calculations. He believes H.M. can self-fund her education as he has done toward his own education.

After posttrial motions urging corrections and expanded rulings, the court ultimately determined in an amended order that $19,889.20 was the cost of attendance at Iowa State for the 2016–2017 school year. The court included $1920 in sorority dues to the total cost of attendance. From $19,889.20, the court subtracted $5520 in scholarships. The court then divided the remaining balance of $14,369.20[1] in half for a $7184.60[2] contribution from each parent. Because this amount was more than one-third of the total cost of attendance, the court reduced the required contribution of each parent to $6629.73.

Roger appealed the court's amended order. We transferred the case to the court of appeals. The court of appeals affirmed. Roger applied for further review, which we granted.

**II. Scope of Review.**

Dissolutions of marriage are tried in equity and appellate review is de novo. *In re Marriage of Vaughan*, 812 N.W.2d 688, 692 (Iowa 2012). On appeal, we give weight to the fact findings of the trial court but are not bound by them. *In re Marriage of Olson*, 705 N.W.2d 312, 313 (Iowa 2005).

**III. Discussion.**

**A. Process for Determining Postsecondary Education Subsidy.** Under Iowa Code section 598.21F(1), a court may order divorced parents to respectively pay "a postsecondary education subsidy if good cause is shown." Iowa Code § 598.21F(1) (2015). The Code defines a postsecondary education subsidy as

---

[1]The court mistakenly stated $14,363.20 in its order.

[2]The court mistakenly stated $7181.60 in its order.

an amount which either of the parties may be required to pay under a temporary order or final judgment or decree for educational expenses of a child who is between the ages of eighteen and twenty-two years if the child is regularly attending a course of vocational-technical training either as a part of a regular school program or under special arrangements adapted to the individual person's needs; or is, in good faith, a full-time student in a college, university, or community college; or has been accepted for admission to a college, university, or community college and the next regular term has not yet begun.

*Id.* § 598.1(8). H.M. will turn twenty-three in October of 2020.

In determining good cause, the court must take into account "the age and ability of the child, the child's financial resources, whether the child is self-sustaining, and the financial situation of the parents." *In re Marriage of Goodman*, 690 N.W.2d 279, 282–83 (Iowa 2004); *accord* Iowa Code § 598.21(F)(2). The district court found and we agree that good cause exists to award a postsecondary education subsidy.

If good cause is shown, the court engages in a three-step process to determine the amount owed. First, the court must ascertain "the cost of postsecondary education based upon the cost of attending an in-state public institution for a course of instruction leading to an undergraduate degree and shall include the reasonable costs for only necessary postsecondary education expenses." Iowa Code § 598.21F(2)(*a*).

Second, the court must ascertain the amount of the child's reasonably expected contribution in light of "the child's financial resources, including but not limited to the availability of financial aid whether in the form of scholarships, grants, or student loans, and the ability of the child to earn income while attending school." *Id.* § 598.21F(2)(*b*).

Third, the court must subtract the child's expected contribution from the total cost of postsecondary education. *Id.* § 598.21F(2)(*c*). The

court must then allocate the remaining costs between the parents in an amount not to exceed thirty-three and one-third percent of the total cost of postsecondary education. *Id.* This appeal calls us to review the three-step analysis applied by the district court.

**B. Step One: The Reasonable Costs for Only Necessary Postsecondary Education Expenses.** The legislature requires us to determine "the cost of postsecondary education based upon the cost of attending an in-state public institution for a course of instruction leading to an undergraduate degree and shall include the reasonable costs for only necessary postsecondary education expenses." *Id.* § 598.21F(2)(*a*). This finding is required whether the child is attending an in-state public institution, an in-state private institution, or an out-of-state institution. The costs of attending an in-state public institution should be substantially the same whether the child attends an in-state public institution, an in-state private institution, or an out-of-state institution.

In this case, Lynn and Roger are arguing over the specific costs for H.M. to attend an in-state public institution. We now hold arguing over the specific costs is unnecessary. Our federal government has established programs to make benefits available to eligible students seeking a postsecondary education. 20 U.S.C. § 1070 (2012). In connection with determining what benefits are available to the students, Congress requires the institutions to determine the cost of attendance for each institution. *See id.* § 1087*ll*. In calculating the cost of attendance for full-time students, the statute defines the cost of attendance as

> (1) tuition and fees normally assessed a student carrying the same academic workload as determined by the institution, and including costs for rental or purchase of any equipment, materials, or supplies required of all students in the same course of study;

(2) an allowance for books, supplies, transportation, and miscellaneous personal expenses, including a reasonable allowance for the documented rental or purchase of a personal computer, for a student attending the institution on at least a half-time basis, as determined by the institution;

(3) an allowance (as determined by the institution) for room and board costs incurred by the student which—

(A) shall be an allowance determined by the institution for a student without dependents residing at home with parents;

(B) for students without dependents residing in institutionally owned or operated housing, shall be a standard allowance determined by the institution based on the amount normally assessed most of its residents for room and board;

(C) for students who live in housing located on a military base or for which a basic allowance is provided under section 403(b) of title 37, shall be an allowance based on the expenses reasonably incurred by such students for board but not for room; and

(D) for all other students shall be an allowance based on the expenses reasonably incurred by such students for room and board[.]

*Id.* § 1087*ll* (1)–(3).

The institutions make the cost of attendance available on their respective websites for prospective students to see and use when considering which institution to attend. *See, e.g.*, Office of Student Fin. Aid, Iowa State Univ., Undergraduate Students: Fall & Spring (2018), https://www.financialaid.iastate.edu/cost/cost-of-attendance/undergra duate-students-fall-spring-all-years/ [https://perma.cc/SA5C-W4DX].

We believe the cost of attendance as published by each institution pursuant to 20 U.S.C. § 1087*ll* is presumed to be the reasonable and necessary cost of attending an in-state public institution for a course of instruction when a court makes its calculation under Iowa Code section

598.21F(2)(*a*). If a party can show a special need or some other circumstances that the presumptive cost is not the reasonable and necessary cost of attending an in-state public institution for a course of instruction for that particular student, the court may vary from the presumptive cost.

Here, the parties argue over the $1920 cost of sorority dues. The presumptive cost of attending Iowa State as shown by the record for the 2016–2017 school year is $19,750. Housing, meals, and other educational expenses are included in the presumptive cost. The issue as we see it is whether the record supports an award of a postsecondary education subsidy beyond the presumptive cost of attending Iowa State.[3]

We find, there is nothing in the record to establish that H.M.'s college costs reasonably requires a postsecondary education subsidy in an amount in excess of the presumptive cost. Accordingly, we decline to vary from the presumptive cost in making an award under section 598.21F(2)(*a*).

In summary, we hold the presumptive cost of attending an in-state institution under section 598.21F(2)(*a*) is the cost of attendance as published by the in-state public institution. In this case, H.M. is attending Iowa State. There has been no showing of factual circumstances to increase this amount. Therefore, the reasonable costs

---

[3]Even though we have held the postsecondary education subsidy constitutional, its constitutionality has been questioned. *See* Dan Huitink, *Forced Financial Aid: Two Arguments as to Why Iowa's Law Authorizing Courts to Order Divorced Parents to Pay Postsecondary-Education Subsidies Is Unconstitutional*, 93 Iowa L. Rev. 1423 (2008); *see also Curtis v. Kline*, 666 A.2d 265, 270 (Pa. 1995). *But see Johnson v. Louis*, 654 N.W.2d 886, 891 (Iowa 2002) (concluding statute did not impermissibly discriminate against illegitimate children whose parents were never married); *In re Marriage of Vrban*, 293 N.W.2d 198, 202 (Iowa 1980) (concluding statute did not violate equal protection where parents were divorced).

for postsecondary education expenses under section 598.21F(2)(*a*) is $19,750.[4]

**C. Step Two: Calculation of the Daughter's Contribution.** We now consider step two in the statutory approach, namely, consideration of the amount H.M. may reasonably contribute to the cost of her education. Under Iowa Code section 598.21F(2)(*b*), the district court is to take into account "the child's financial resources, including but not limited to the availability of financial aid whether in the form of scholarships, grants, or student loans, and the ability of the child to earn income while attending school." The district court included $5520 in scholarships awarded to H.M. as part of her expected contribution.

We first note Roger argues there was an additional $500 scholarship not included in the court's calculation. Lynn asserts, however, there was in fact no additional $500 scholarship. The court found Lynn's assertion credible. We do not disturb that finding, except insofar as the court made a minor error in calculating the total scholarship funds available to H.M. Based on our de novo review of the record, the available scholarship funds were $5525.

Roger challenges the court's calculation of H.M.'s expected contribution on several grounds. First, Roger asserts the scholarship amount should be subtracted from the total reasonable costs for only necessary postsecondary education expenses as part of step one of the statutory analysis and should not be considered a contribution by H.M. under step two. Second, he asserts H.M.'s contribution should include $5500 in unsubsidized student loans that were available to H.M. but

---

[4]If a child is attending an institution other than an in-state public institution, the court should take the average cost of our in-state public institutions as the presumptive cost for purposes of section 598.21F(2)(*a*).

which she declined. Third, Roger asserts the court did not include any financial contribution that H.M. could make toward her education with money earned from part-time employment during the school year and from full-time summer employment. Fourth, Roger suggests the $750 in child support provided to Lynn over the summer months prior to the 2016–2017 school year should be included as a contribution by H.M. to her education. Finally, Roger notes H.M.'s $2119.11 bank account balance should have been considered in calculating H.M.'s financial contribution to her education.

On the issue of treatment of the $5525 in scholarships awarded to H.M., the court properly included scholarships in the calculation of H.M.'s contribution to her college expenses under step two of the statutory analysis as provided in Iowa Code section 598.21F(2)(*b*). The statute itself explicitly mentions "scholarships" as a source of the child's contribution. Accordingly, the court did not err by attributing the scholarship funds to H.M. as part of her contribution to her education.

We next turn to the question of whether available student loans should have been considered as part of H.M.'s expected contribution. Roger claims H.M. was offered $5500 in unsubsidized student loans to defray educational costs, yet H.M. declined them. Roger argues these funds were available to H.M., and thus the loans should be included in the calculation of her expected contribution.

We do not agree. Under the statute, the court must determine amounts that the child may reasonably be expected to contribute to defray the costs of postsecondary education. In *In re Marriage of Neff*, we held that in some circumstances, available loans should be considered in calculating the child's contribution to her education. *See* 675 N.W.2d 573, 579–80 (Iowa 2004). We noted it was reasonable to require the

children to assume responsibility for repayment of loans because of the "meager financial situation of the parents." *Id.* at 580. The point of *Neff* is that while loans may be included in the child's expected contribution for postsecondary education, the inclusion of the loans must be reasonable under all the facts and circumstances of a particular case.

Here, Lynn and Roger had set aside what around the time of their partial stipulation amounted to a little over $63,000 in a § 529 account for H.M.'s education. It makes little sense to require H.M. to accumulate a substantial debt burden in her college years when her parents had prudently set aside substantial funds for her postsecondary education in an amount sufficient to avoid such a result. The very purpose of setting the money aside in a § 529 account is to lessen the need to accumulate debt to finance a college education.

Further, the record indicates that interest on the unsubsidized loans would commence accruing immediately. As a result, if H.M. accepted the loans, by the time she graduates from her five-year program and has the ability to begin repaying the putative loans, she would have accumulated five years of accrued interest. Given the balance in the § 529 account and the incomes earned by Lynn and Roger, we decline to disturb the court's conclusion that the amount of available unsubsidized loans should not be included in the child's expected contribution.

Roger suggests if there is a surplus in the § 529 funds set aside for H.M., the funds may be transferred to the § 529 accounts of other children, thus providing a rationale for limiting the expenditure of funds in H.M.'s § 529 account. Lynn disagrees and contends that each child's § 529 accounts may only be used for the benefit of that child. The dispute is not presently before us. Regardless, there is no evidence of any kind in the record related to the potential postsecondary educational

needs, if any, of the other children.  Further, the record shows that since the divorce, Roger has not made additional contributions to the § 529 accounts of his other children nor has he rebalanced the amounts in the portion of the three § 529 accounts under his control since the dissolution.  Under these circumstances, we decline to limit our consideration of the funds that might be available in H.M.'s § 529 account to provide for the speculative educational needs of her siblings.

We next turn to the question of whether the district court erred in not including an amount for income that could be earned by H.M. by working part-time during the school year and full-time during the summer.  Lynn testified that H.M. "has a job [during the school year] pending with the Department of Recreation Services, and they've offered her five hours a week at minimum wage."  Based on this testimony alone, H.M. should be able to contribute approximately $1000 per year toward her education.  This would not include summer earnings.

Moreover, the statute speaks about the "ability" of the child to earn income, not actual work income.  Iowa Code § 598.21F(2)(*b*).  Student jobs generally are not planned far in advance and come and go with little notice.  Although the record below is sparse, we can take judicial notice that the average unemployment rate in the Ames, Iowa Metropolitan Statistical Area in 2016 was 2.3 percent.  *See* Bureau of Labor Statistics, U.S. Dep't of Labor, Local Area Unemployment Statistics, https://www.bls.gov/lau/lamtrk16.htm (last visited May 11, 2018) [https://perma.cc/N3KJ-DRFD].  An expectation that H.M. will be able to earn income is a realistic one, even on a sparse record.

In *Neff*, which involved two college-student children of divorced parents, we said,

> It is not unreasonable to expect both children to work at least part-time during the school year and full-time during breaks and the summer months. In doing so, both children can be expected to earn a substantial amount of money for college.

675 N.W.2d at 580. *Neff* is factually distinguishable because these two children had a track record of working substantial hours, and their parents were of limited means. *Id.* Nonetheless, the case drives home the point that the student's anticipated earnings can be based on a reasonable expectation, as opposed to proof of the existence of a specific job.

Roger next suggests the $750 in child support provided to Lynn over the summer months prior to the 2016–2017 school year should be included as a contribution by H.M. to her education. We reject that approach. The purpose of the $750 was to provide funds for Lynn to help pay for the expenses arising from physical custody of H.M. We do not think it is appropriate to include child support payable to Lynn in calculating H.M.'s expected contribution to her education.

Finally, at the time of the hearing, H.M. had a balance in her checking account of $2119.11. Roger asserts that these funds should be considered in determining the contribution that H.M. may make toward her postsecondary education. We think Roger has a point here. The balance in H.M.'s checking account at the time of the hearing was $2119.11. The district court did not include any amount from this savings account in the child's expected contribution. The parental subsidies and scholarships available to H.M., however, will not cover all the costs of her college education. Factually, she will be ineligible for a parental subsidy after October of 2020. Although we do not think it is reasonable to require H.M. to drain all her savings, particularly in light of her need for regular car loan payments, we think it is reasonable that

$500 of her savings should be available to pay for her first year of education.

**D. Step Three: Calculation of Each Parent's Contribution.** Again, we adopt $19,750 as the reasonable costs for only necessary postsecondary education for the 2016–2017 school year. From that amount, we subtract H.M.'s expected contribution which, as a result of the approach outlined above, increases from $5525 to $7025 as a result of our inclusion of a contribution of $1500 from H.M.'s work earnings and savings.

The amount left after the subtraction of H.M.'s contribution from the total cost of attendance is $12,725. Because each spouse has control over half of the § 529 funds held for the benefit of H.M., we divide the $12,725 in half to establish a per-parent contribution of $6362.50.

The maximum amount that each parent can contribute for postsecondary education is thirty-three and one-third percent, or in simpler terms one third, of the total cost of postsecondary education. Iowa Code § 598.21F(2)(*c*). In other words, the maximum that Lynn and Roger can each pay is $6583.33. Accordingly, because Lynn's and Roger's respective contributions do not exceed the maximum allowed in this case, Lynn and Roger must each contribute $6362.50 toward H.M.'s postsecondary education.

**IV. Conclusion.**

For the above reasons, we vacate the decision of the court of appeals and reverse the judgment of the district court. Each parent must contribute $6362.50 toward H.M.'s education for the 2016–2017 academic year. On remand, the district court should enter judgment

accordingly. We exercise our discretion to decline to award attorney's fees.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**