# IN THE COURT OF APPEALS OF IOWA

No. 21-1154
Filed August 3, 2022

IN RE THE MARRIAGE OF CHRISTOPHER SCOTT OSSOWSKI
AND ANDRIA LEE REILAND

Upon the Petition of
CHRISTOPHER SCOTT OSSOWSKI,
  Petitioner-Appellant,

And Concerning
ANDRIA LEE REILAND,
  Respondent-Appellee.
_____

  Appeal from the Iowa District Court for Scott County, Stuart P. Werling,

Judge.


  A parent appeals the district court's order imposing an obligation to pay a

postsecondary education subsidy. **AFFIRMED AS MODIFIED**.


  Arthur Buzzell, Bettendorf, for appellant.

  Christine Frederick, Davenport, for appellee.



  Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

Divorced parents of a college student disagree about their obligations to help fund their daughter's college education. Unable to resolve their disagreement, the mother filed this action seeking to impose an obligation for a postsecondary education subsidy pursuant to Iowa Code section 598.21F (2021). Following a trial, the district court ordered both parents to pay an equal postsecondary education subsidy. The father appeals. Our review of an order involving a postsecondary education subsidy is de novo. *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). With such review, we give weight to the district court's fact findings, but we are not bound by them. *Id.*

## I.     The Statutory Framework for a Postsecondary Education Subsidy

Under Iowa Code section 598.21F(1), divorced parents can be ordered to pay "a postsecondary education subsidy if good cause is shown." *Id.* A postsecondary education subsidy is defined as:

> an amount which either of the parties may be required to pay under a temporary order or final judgment or decree for educational expenses of a child who is between the ages of eighteen and twenty-two years if the child is regularly attending a course of career and technical training either as a part of a regular school program or under special arrangements adapted to the individual person's needs; or is, in good faith, a full-time student in a college, university, or community college; or has been accepted for admission to a college, university, or community college and the next regular term has not yet begun.

Iowa Code § 598.1(8). If good cause is established, a three-step process is applied to determine the amount owed by the parents. *Larsen*, 912 N.W.2d at 449. Here, the parents do not challenge that there is good cause for granting a postsecondary education subsidy, so we proceed to the three-step process.

The first step is to determine the reasonable and necessary cost of attending an in-state public institution for a course of instruction leading to an undergraduate degree. *Id.* (citing Iowa Code § 598.21F(2)(a)). That figure is to be determined using the cost-of-attendance figures published by the state's public institutions pursuant to 20 U.S.C. section 1087*ll*. *Id.* at 450. The cost figures published by each school are presumed to be the reasonable and necessary costs of attending that school.[1] *Id.*

The second step is to determine the amount the child can be reasonably expected to contribute. *Id.* at 449 (citing Iowa Code § 598.21F(2)(b)). The child's expected contributions may include scholarships, grants, student loans, and earnings while attending school. *Id.*

The third step is to subtract the child's expected contribution (calculated in step two) from the total education cost (calculated in step one) to arrive at a net figure. *Id.* (citing Iowa Code § 598.21F(2)(c)). The court then determines how much each parent is required to contribute toward that net figure, with the condition that neither parent's obligation can exceed one-third of the total education cost figure from step one. *Id.* (citing Iowa Code § 598.21F(2)(c)).

## II.    Factual Background and Calculations by the District Court

Having laid out the framework of the three-step process, we turn to the facts of this case and the district court's calculations. The record shows that the parties' older child was attending her second year of college during the 2021 through 2022

---

[1] A different cost figure can be used "[i]f a party can show a special need or some other circumstances that the presumptive cost is not the reasonable and necessary cost of attending an in-state public institution." *Larsen*, 912 N.W.2d at 450. Neither party claims such special need or circumstance here.

school year, and it is the funding of her college expenses at issue here. She chose to attend a community college in Colorado. The mother presented evidence of the actual cost of attending that community college. The parties also presented evidence of the cost to attend the University of Iowa, using the cost figures made available by the university, which was $26,246.00 per year.

To calculate the parents' obligation for a postsecondary education subsidy, the district court started by using actual cost figures presented by the mother for the child to attend the community college in Colorado. The court then subtracted costs the court deemed not reasonably related to the child's educational expenses. The step-one yearly figure arrived at by the district court using this method was $32,291.62. This figure included $5040.00 of transportation-related expenses for gas, vehicle maintenance, vehicle payment, and car insurance.

For step two, the court determined that the child could contribute $11,994.00 for the year, consisting of $6494.00 of PELL grants, $3500.00 of subsidized student loans, and $2000.00 of unsubsidized student loans. The court expressly refused to consider $8500.00 of work study offered to the child in calculating the child's expected contribution.

As for the final step of the process, the court took the actual cost figure from step one ($32,291.62) and subtracted the child's expected contribution from step two ($11,994.00) to arrive at a net figure of $20,297.62. The court then determined each parent could contribute equally to cover that net figure, resulting in each parent owing $10,148.81. As that figure exceeds the statutory cap of one-third of the cost of attending an in-state public institution, the court ordered each parent to

pay one-third of the cost of attending the University of Iowa, or $8748.67 ($26,246.00 ÷ 3).

## III.  Issues Raised

The father challenges the district court's calculations under step one and step two, which, by definition, affect step three.  Specifically, he contends that (1) transportation costs of $5040.00 should not have been included in the total cost figure in step one and (2) the $8500.00 offered to the child for work study should have been included as part of the child's expected contribution in step two.  The father argues that, when the $5040.00 of transportation costs is deducted from the calculation in step one (reducing the step one calculation to $27,251.62) and the $8500.00 of work-study earnings is added to the child's expected contribution in step two (increasing the step two calculation to $20,494.00), the resulting net figure is reduced to $6757.62.  He contends the parties should be equally responsible for this net amount, making each parent's obligation $3378.81.

## IV.  Analysis

As noted, the district court used a method of calculating the total education cost in step one that involved determining the actual cost of attending an out-of-state institution.  The father buys into this same method by targeting one of the actual cost figures—the cost of transportation.  The problem with the father buying into the method used by the district court is that it is not the method required by our statute and our case law.

In fairness to the district court and the parties, the statute is not entirely clear on the method that should be used to calculate a postsecondary education subsidy in cases in which a child is not attending an in-state public institution, and we have

only a few appellate cases addressing the issue. We use this case as an opportunity to provide additional clarity on the method for calculating the subsidy in these types of cases.

When a child is attending an in-state private or out-of-state institution, step one is the same as it is in cases in which a child is attending an in-state public institution, which is to calculate the reasonable and necessary cost of attending an in-state public institution. *Id.* at 449 (holding that, for step one, the statute requires calculation of the cost of attending an in-state public institution "whether the child is attending an in-state public institution, an in-state private institution, or an out-of-state institution."). This calculation involves using the cost-of-attendance figures published by the in-state institutions pursuant to 20 U.S.C. section 1087*ll*, which makes "arguing over the specific costs . . . unnecessary." *Id.* at 449–50. We do not use the cost figures for attending an in-state private or out-of-state institution. *See In re Marriage of Grittman*, No. 05-1925, 2007 WL 601758, at \*2 (Iowa Ct. App. Feb. 28, 2007) (holding that the district court "should not have considered the cost of attending Central [College, an in-state private institution]"). Applying this method in this case, the total cost calculation from step one is the cost of attending the University of Iowa, which is $26,246.00,[2] not $32,291.62 as urged by the mother and used by the district court.

---

[2] When, as here, a child is attending an institution other than an in-state public institution, our courts are to use the average cost of our in-state public institutions as the presumptive cost for purposes of step one. *Larsen*, 912 N.W.2d at 451 n.4. As neither party presented evidence of the cost of attending Iowa State University or the University of Northern Iowa, we are unable to calculate the average cost, so we will use the University of Iowa figures only. *See Feld v. Borkowski*, 790 N.W.2d 72, 78 (Iowa 2010) ("Our obligation on appeal is to decide the case within the

As for step two, the process is only slightly more complex when a child is attending an in-state private or out-of-state institution in comparison to the calculation when the child is attending an in-state public institution. Even though we use the cost of attending an in-state public institution in step one, calculating the child's expected contribution in step two when attending an in-state private or out-of-state institution requires a determination of whether certain contributions are specific to that institution. In making the step-two calculation in *Grittman*, our court expressly recognized the need to consider whether the child would have received some of the scholarships and loans the child received at the private institution she attended if she had attended an in-state public institution instead. 2007 WL 601758, at \*2; *see also In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) ("[T]here is no evidence that [the child] would not have been able to contribute similar amounts [of loans and federal work-study money] to her own college education if she had attended an in-state college."). Because our court in *Grittman* found that the child would not have received some of the scholarships and loans if she attended an in-state public institution, those scholarships and loans were not included in the step-two calculation. *Grittman*, 2007 WL 601758, at \*2.

Here, the step-two calculation of $11,994.00 consists of PELL grants and student loans. There is no evidence in the record that these funds would not have been available to the child if she attended an in-state public institution, and neither party makes any such claim on appeal. As a result, we consider all of these funds in making the step-two calculation.

---

framework of the issues raised by the parties. Consequently, we do no more and no less." (internal citation and footnote omitted)).

The only dispute as to the step-two calculation here is the father's challenge to the district court's refusal to consider the work study funds offered to the child. As noted, in making the step-two calculation, the district court expressly refused to consider $8500.00 of work study offered to the child as part of the child's expected contribution. The father contends this $8500.00 should have been considered along with the $11,994.00 of PELL grants and loans in calculating the child's contribution.

We have no difficulty rejecting the father's challenge. The district court found that the child has a number of mental-health and learning-related concerns that interfere with her ability to acquire an education and thus make it inappropriate for her to accept a work-study offer. As a result, the court refused to take into account any potential earnings the child may receive if she accepted the work-study offer. Following our de novo review, we agree with the district court and refuse to include potential work-study earnings in the calculation of the child's expected contributions for the same reasons stated by the district court. Like the district court, we calculate the child's expected contributions in step two as $11,994.00.

Proceeding to step three, the step is the same regardless of whether the child is attending an in-state public, in-state private, or out-of-state institution. We start with the step-one calculation of $26,246.00, the cost of attending an in-state public institution. We then subtract the step-two calculation of $11,994.00, producing a net figure of $14,252.00. Responsibility for the net figure needs to be equitably divided between the parties, with the condition that a parent's obligation cannot exceed one-third of the cost of attending an in-state public institution. *See*

Iowa Code § 598.21F(2)(c). Neither party challenges the notion that they should be equally responsible for the net figure and, like the district court, we find it equitable to evenly divide it based on the circumstances in this case. Equally dividing the net figure results in each parent being responsible for $7126.00. As this figure is less than one-third of the cost of attending an in-state public institution (i.e., $26,246.00 ÷ 3 = $8748.67), the calculation falls within the cap set by the statute. *See id.* Therefore, each parent shall be responsible for a postsecondary education subsidy for the older child in the amount of $7126.00. We modify the district court's ruling accordingly.

## V.     Conclusion

We affirm the district court's order except to modify it to require each party to pay a postsecondary education subsidy of $7126.00 for the parties' older child. Costs on appeal are divided equally between the parties.

**AFFIRMED AS MODIFIED.**