**IN THE COURT OF APPEALS OF IOWA**

No. 22-0729
Filed March 8, 2023

**IN RE THE MARRIAGE OF JENNA K. RICKLEFS**
**AND JONATHAN V. RICKLEFS**

**Upon the Petition of**
**JENNA K. RICKLEFS,**
        Petitioner-Appellee/Cross-Appellant,

**And Concerning**
**JONATHAN V. RICKLEFS,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Pocahontas County, Kurt J. Stoebe,

Judge.


        A former spouse appeals from a dissolution decree regarding property

valuation, a child support obligation, and summer visitation.  His former spouse

cross-appeals as to the child support obligation and summer visitation. **AFFIRMED**

**AS MODIFIED ON THE APPEAL; AFFIRMED ON THE CROSS-APPEAL.**


        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant/cross-appellee.

        Scot L. Bauermeister of Fitzgibbons Law Firm, L.L.C., Estherville, for

appellee/cross-appellant.


        Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

Jonathan Ricklefs appeals from a dissolution decree. He contends the court assigned an incorrect value to two pieces of farm equipment. He claims the court also wrongly imputed income to him for child support purposes. And he claims the court should have increased his summer visitation with the child from four nonconsecutive weeks to six nonconsecutive weeks. On cross-appeal, Jenna Ricklefs requests Jonathan's imputed income be increased by $3000 and that his summer visitation be reduced to three nonconsecutive weeks for the summer of 2023. She also requests appellate attorney fees.

On our de novo review, we modify the value the district court placed on one piece of farm machinery but do not disturb the value of the second piece. We conclude the district court correctly determined Jonathan's income for child support purposes. We also find the summer visitation schedule set by the district court affords maximum continuing physical and emotional contact with both parents and is in the child's best interest. Accordingly, we affirm the decree as modified. We affirm on the cross-appeal. We decline to award appellate attorney fees.

## I.      Background Facts & Proceedings

Both parties to this proceeding have ties to agriculture. Prior to the marriage, Jenna graduated from South Dakota State University in 2013 with a degree in agronomy. She has worked in this field since graduation. Jonathan completed a year of college at Iowa State University before beginning employment in trucking. He began farming with his father in 2014. Jenna and Jonathan married in November 2016. Jenna moved into the home where Jonathan was residing in rural Rolfe, Iowa, shortly before the marriage. Both lived there during the marriage

until Jenna moved back to her hometown of Sloan, Iowa, following the separation in January 2021.[1] The parties have one child, a son, L.R., born in 2019.

At the time of the dissolution, Jenna was thirty-one years old and Jonathan was thirty-six years old. Jonathan was primarily engaged in farming with his father. Jonathan and his father jointly farmed about 2300 acres as tenants.[2] Some of the land belonged to Jonathan's father's family but at the time of the dissolution, neither Jonathan nor Jenna had a legal interest in the land. And Jonathan was engaged in other employment and income-generating businesses throughout the marriage.

Jonathan and his father routinely split the cost of equipment necessary for farming, including the two pieces at issue on appeal, a tractor and disk ripper. Jonathan contributed roughly $25,000 of the $125,000 purchase price of a John Deere 8520T tractor in 2014, before the marriage. Jonathan's contribution was financed through a lender. At the time of the dissolution, the tractor was worth about $50,000. In 2019, the co-op Jonathan and his father used mistakenly assigned the sale of some of Jonathan's crop to his father, valued at $40,000. Jenna, citing a bank balance sheet created in December 2020, claims Jonathan's father repaid Jonathan by giving him the remainder interest in the tractor. Jonathan's father claimed he wrote a check directly to Jonathan, while Jonathan believed his father may have paid some of his bills. The court ultimately found

---

[1] This home is owned by Jonathan's father and is not part of the asset division.
[2] Jonathan testified that of this total, approximately 750 acres are leased in his name alone.

Jenna's value credible, assigned the full value of the tractor as a marital asset, and awarded the tractor to Jonathan.

In May 2021, after the parties' separation, Jonathan traded in a 2012 disk ripper for a 2014 International Harvest disk ripper. The value of the 2012 disk ripper was listed on a 2020 bank balance sheet at $50,000. The new disk ripper's cost was $57,800. The trade-in value of the 2012 disk ripper was $25,000. Jonathan's father covered the balance of the cost of the new disk ripper. Jenna's appraisal valued the 2014 disk ripper at $25,000. Jonathan, using Jenna's appraised value, placed his equity at about $12,500, forty-four percent of the ownership. The court set the value of the 2014 disk ripper at $50,000, awarded the disk ripper to Jonathan, and determined the marital value to be $25,000. The district court calculated the equalization payment due from Jonathan to Jenna at $47,583.54.

As noted, Jonathan had worked as a trucker during the marriage; he had not engaged in that business since around 2018. He also operated an auto shop, where he would service his own equipment as well as other people's vehicles. Jonathan testified the shop earned little income and relayed the obstacles that prevented him from trucking in the short-term. Jonathan claimed his total annual income was around $26,000. Based on a combination of his farming, trucking, and shop earning capacity, the court imputed Jonathan's income for child support purposes at $60,000.

Jenna currently works in soil sampling and in the sale of agricultural products. She also serves as the primary caregiver of L.R. The court set her

income at $30,000, but modified her income to $49,000 following a motion pursuant to Iowa Rule of Civil Procedure 1.904.

The parties were awarded joint legal custody. The court, citing Jenna's role as primary caregiver, awarded her physical care of L.R. Jonathan was provided alternating weekend visitation and holiday visitation. The court initially ordered two non-consecutive weeks of visitation for Jonathan during the summer of 2022, increasing to three weeks in 2023, and four weeks in 2024 and all subsequent years. The court modified this to four non-consecutive weeks starting in the summer of 2022, also as part of the ruling on a rule 1.904 motion. Jonathan appeals, and Jenna cross appeals.

## II. Standard of Review

We review dissolution of marriage de novo. *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). "On appeal, we give weight to the fact findings of the trial court but are not bound by them." *Id.* Because the district court is able to observe witness testimony firsthand, we give particular deference to the court's credibility determinations. *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa 2010). The assets should be given their value as of the date of trial. *See In re Marriage of Hansen*, 733 N.W.2d 683, 688 (Iowa 2007). "Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *Id. at* 703. We generally defer to the trial court when valuations are supported by accompanying credibility findings or corroborating evidence. *Id.* "In dissolution-of-marriage cases, marital property is to be divided equitably, considering the factors outlined in Iowa Code section 598.21[(5)]." *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013) (quoting *Hansen*, 733 N.W.2d at 702). "We will

disturb the district court's 'ruling only when there has been a failure to do equity.'" *McDermott*, 827 N.W.2d at 676.

## III. Property Distribution

The district court was tasked with valuing farm equipment and determining the marital share of some of the equipment.[3] Jonathan contests the valuation of only two pieces in this appeal. First, he asserts a tractor he had prior to the marriage should be treated as a premarital asset. Alternatively, he argues that if it is considered a marital asset, the value placed on this asset by the district court is too high. He also claims the court incorrectly valued his percentage of ownership in the 2014 disk ripper.

### A. John Deere 8520T Tractor

Jonathan claims the district court should have excluded the tractor from the property distribution as a premarital asset. Generally, a court's "first task [is] to identify and value all the assets subject to division." *Id.* at 678. "To identify divisible property, the district court looks for all marital assets that exist at the time of the divorce." *Id.* "Premarital property may be included in the divisible estate. The district court may assign varying weight to the premarital property, but should not automatically award it to the spouse who owned the property prior to the marriage." *Id.* (internal citation omitted).

We determine the district court properly included the tractor as marital property subject to division. It is undisputed that Jonathan and his father bought

---

[3] Prior to trial the parties filed a pretrial stipulation which identified items as premarital property, awarded them to Jonathan, and did not include them as marital assets.

the tractor prior to Jonathan's marriage to Jenna. But that fact alone is not dispositive. *Id.* We look to all the factors found in section 598.21(5) (2021). While this was not a long-term marriage, the parties made payments toward the indebtedness on this tractor during the marriage. Jonathan received the majority of the marital assets related to farming. Excluding the tractor from the marital estate would result in an inequitable distribution of property. We conclude the tractor is marital property.

Jonathan also claims that even if the court properly included the tractor as a marital asset, the court assigned the wrong value to it. When Jonathan and his father bought the tractor, Jonathan contributed $25,000 of the $125,000 purchase price. The tractor is now worth about $50,000. As a result, Jonathan contends his equity in the tractor is only $10,000, or one-fifth of the current value. Yet the court assigned the full $50,000 as marital property because the court believed Jenna's assertions that Jonathan's father had provided the remainder of the tractor equity to Jonathan as compensation for a co-op error in paying Jonathan's father for some of Jonathan's crops in 2019. We believe the record supports the district court valuation.

Jenna testified that she believed Jonathan's father provided his equity in the tractor as compensation for the co-op's error. That testimony is supported by Jonathan's 2020 balance sheet, which indicated that $40,000 was "[o]wed from [Jonathan's father] likely in the form of tractor ownership." Jonathan and his father provided conflicting testimony on how the co-op's payment had been rectified—his father believed he wrote a check for the sum, while Jonathan believed his father

paid bills for him. Neither version is supported by any documentation.[4] And the court found both Jonathan and his father lacked credibility. *See id.* ("[W]e ordinarily defer to the trial court when valuations are accompanied by supporting credibility findings or corroborating evidence."). We determine the court's valuation of the tractor at $50,000 to be supported by the record.

### B. 2014 International Harvest Disk Ripper

Jonathan challenges the district court's valuation of the 2014 disk ripper. Jonathan and his father purchased the 2014 disk ripper for $57,888 after the separation. The purchase was structured with Jonathan's trade-in value of the 2012 disk ripper of $25,000.[5] Jonathan's father paid for the remainder of the 2014 disk ripper. As a result, Jonathan owned about forty-four percent of the new disk ripper. Jenna had the disk ripper appraised in July 2021 as part of the dissolution proceedings. The appraiser set the value at $25,000. The court utilized the figure of $50,000 from the 2012 disk ripper on the 2020 balance sheet when it assigned the disk ripper to Jonathan, valuing the marital share at $25,000.

We determine the court's use of the value from the 2012 disk ripper instead of the appraised value of $25,000 for the 2014 disk ripper was not supported by the evidence. With respect to the 2014 disk ripper, Jenna does not contest her own appraisal value of $25,000. Instead, she argues the court should set the marital value at $25,000, the value of the trade-in after the parties' separation. We are not unsympathetic to this argument. But trade-in value may not represent the

---

[4] Jenna submitted bank account records that verified a $40,000 check was not deposited.

[5] The parties' 2020 balance sheet prepared for the lender set the value of the 2012 disk ripper at $50,000.

fair market value. The record does not contain an appraisal of the older disk ripper. We determine that using Jenna's 2021 appraisal of the new disk ripper, the value closest to the date of trial, Jonathan's forty-four percent interest in this piece of equipment is $11,000. Given the reduction in value by $14,000, we reduce the property settlement owed to Jenna by Jonathan by $7000.00, for a total equalization payment of $40,583.54.[6]

## IV. Child Support Obligation

Jonathan contests the district court's order finding he has an income for child support purposes of $60,000. Jonathan argues the court wrongly imputed income from his auto shop and trucking and that his total annual income from farming is closer to about $26,883. Jenna asserts that Jonathan's income should be imputed at $63,000.00.

"In determining child support under the guidelines, the court must determine both the custodial and noncustodial parent's net monthly income. Net monthly income is defined in the guidelines to be the gross monthly income less specifically enumerated deductions." *In re Marriage of Powell*, 474 N.W.2d 531, 533 (Iowa 1991). "'[G]ross monthly income' means reasonably expected income from all sources." Iowa Ct. R. 9.5(1). The focus is on income that is "reasonably expected," rather than "uncertain or speculative." *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005). That said, "[c]hild support is generally not reduced because of self-inflicted or voluntary reductions in income." *In re Marriage of Fidone*, 462 N.W.2d 710, 712 (Iowa Ct. App. 1990). Courts may consider a wide range of evidence, focusing on

---

[6] Jenna's post-trial brief requested an equalization payment of $40,059.

the "most reliable evidence presented," to calculate a parent's income. *Powell*, 474 N.W.2d at 533.

Generally, the district court should use a party's actual income rather than imputing income, unless provided for by rule. Iowa Ct. R. 9.5(1)(d). Rule 9.11(1-4), as relevant here, permits a court to impute income when failing to do so "would be unjust or inappropriate" because (1) "substantial injustice would result to the payor, payee, or child(ren)"; (2) "[a]djustments are necessary to provide for the needs of the child(ren) or to do justice between the parties, payor, or payee under the special circumstances of the case"; or (3) "a parent is voluntarily unemployed or underemployed without just cause."

Here, the district court imputed income to Jonathan because it "has no faith in the testimony of [Jonathan's father] or Jonathan regarding their income or expenses." In particular, the court determined "there is strong evidence that [Jonathan] is concealing income and over-reporting expenses," particularly in relation to Jonathan's work in farming and in the auto shop. Ultimately, the court imputed income to Jonathan because "[h]e is underemployed. If he is not, then he is concealing income. Regardless, he has an obligation to support his son," which child support based on Jonathan's claimed income would fail to do.

We conclude the district court appropriately imputed income to Jonathan in the amount of $60,000. We defer to the court's credibility determinations, which clearly found Jonathan to be less than credible. The court's determination is also supported by the record, highlighting Jonathan's history of manipulating his finances. For instance, he conceded that he signed the financial statement indicating his father had paid him $40,000 for the tractor despite disputing the

payment during trial because, "I got to pad that in order to get the banker to want to loan me money." He also offered contradictory testimony regarding the income earned by the auto shop, claiming the $25,000 he listed as income from the shop in the 2020 balance sheet was more like $5000. We agree with the district court that Jonathan's testimony related to his income from farming and the auto shop is not credible.

We also agree with the district court's assessment concerning Jonathan's underemployment. He testified his farm work requires him to be in the field two weeks in the spring and four weeks in the fall. Jonathan's tax return indicates he earned approximately $35,000 as a part-time trucker in 2018. He also estimates that full-time employment in that field would yield approximately $70,000.00. Even returning to trucking part-time would substantially increase his income. The court also found Jonathan underreported his shop income, citing specifically to an instance during the dissolution proceedings where he was to be paid $25,000 for work and nearly $20,000 of that payment was routed to his father. By considering his income from farming, which Jonathan claims is about $26,000, income from the auto shop, and his capacity to earn income in trucking, even part-time, the court appropriately imputed Jonathan's income for child support purposes as $60,000.

## V.     Summer Visitation

Jonathan claims the district court should have awarded him six non-consecutive weeks of visitation rather than four. Jenna asserts that four non-consecutive weeks, as set by the court, is appropriate beginning in the summer of

2024. But as to the summer of 2023, Jenna asserts Jonathan's visitation should be set at three non-consecutive weeks.

When considering visitation, Iowa Code section 598.41(1)(a) commands: "The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents."

Physical care, not contested on appeal, understandably was a focus of the testimony at the district court level. While much of the testimony from Jenna focused on Jonathan's drinking and his relationship with the parties' teenage babysitter, she does not assert Jonathan's visitation poses a risk to L.R. We presume liberal visitation is in L.R.'s best interests. *See* Iowa Code § 598.41(1)(a).

That said, the district court decree as written provides liberal visitation. Jonathan has visitation with L.R. every other weekend and extended holidays. Four non-consecutive weeks during the summer months provides Jonathan and L.R. maximum contact during the summer months while preserving Jenna's own summer contact with the child. The record does not demonstrate the length of summer break for L.R. as he progresses through preschool and enters grade school. On this record, we cannot say four weeks of summer visitation versus the requested six weeks was inequitable or contrary to L.R.'s best interests. We determine the same is true for the cross-appeal requesting a reduction of one week for this coming summer. "It was the district court's job to find a balance that serves the child's best interest. The court did so and 'we decline to tinker.'" *Lansing v. Meyer,* No. 20-1573, 2021 WL 5919043, at *2 (Iowa Ct. App. Dec. 15, 2021)

(quoting *In re Marriage of Slayman*, No. 16-1240, 2017 WL 2181865, at *5 (Iowa Ct. App. May 17, 2017)).

## VI.    Costs and Appellate Attorney Fees

Jenna requests an award of $4000 of appellate attorney fees.[7] "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). "Factors to be considered in determining whether to award attorney fees include: 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993)). After reviewing the relevant factors, we decline to award appellate attorney fees. Court costs, if any, are taxed equally to the parties.

**AFFIRMED AS MODIFIED ON THE APPEAL; AFFIRMED ON THE CROSS-APPEAL.**

---

[7] Jenna filed an affidavit of attorney fees that indicates her appellate attorney fees total about $7350.